[SURETY. CONSTRUCTION OF STATUTE.]

## The UNITED STATES *against* VANZANDT.

The case of the *United States* v. *Kirkpatrick*, (9 *Wheat. Rep.* 720.) revised, its authority confirmed, and applied to the present case.

An omission of the proper officer to *recall* a delinquent paymaster under the injunctions of the 4th section of the act of the 24th of April, 1816, c 69. does not discharge his surety.

The provisions requiring the delinquent paymaster to be recalled, and a new appointment to be made in his place, are merely directory, and intended for the security of the government; but form no part of the contract with the surety.

The statute not removing from office the delinquent paymaster, *ipso facto*, but only making it the duty of the proper officer to remove him, the circumstance of new funds being placed in his hands after his delinquency, does not discharge the surety.

*Feb. 8th.*     THIS cause was argued by the *Attorney General* and Mr. *Swann*, for the plaintiffs,[a] and by Mr. *Jones* and Mr. *Key*, for the defendant.

*Feb. 16th.*     Mr. Justice WASHINGTON delivered the opinion of the Court.

This was an action of debt brought in the Circuit Court for the District of Columbia, upon a paymaster's official bond, against the defendant in error, one of the sureties in that bond. The condition of the bond, as set out upon oyer, is in the following words, viz. " That whereas the above bounden John Hall is appointed pay-

     *a* They cited the United States v. Kirkpatrick, 9 *Wheat. Rep.* 720.

master of the rifle regiment in the army of the United States ; now, if the said J. H. shall well and truly execute, and faithfully discharge, according to law, and to instructions received by him from proper authority, his duties as paymaster aforesaid, and he, his heirs, &c. shall regularly account when thereunto required, for all moneys received by him from time to time, as paymaster aforesaid, with such person or persons as shall be duly authorized and qualified on the part of the United States for that purpose, and, moreover, pay into their treasury such balance as, on final settlement of the said J. Hall's accounts, shall be found justly due from him to the United States, then," &c.

To the declaration filed in this action, the defendant pleads, that the said John Hall did well and truly observe and discharge, according to law, and to instructions received by him from proper authority, his duties as paymaster in the rifle regiment of the army of the United States, and did pay into the treasury such balance as, on settlement, was found due, and hath observed, kept, and fulfilled, every matter and thing in the condition of the said bond, which, according to the said condition, ought to have been observed and kept.

The breach set out in the replication is, that the said J. H. did not pay to the United States the sum of           which was due, and in arrear, on a certain day, and which he ought then to have paid according to the condition of his bond.

1826.

The U. S.
v.
Vanzandt.

Upon the trial of the issue formed on the matter stated in the replication, a bill of exceptions was taken to the opinion of the Court, by the United States, which states, that to support the issue on the part of the United States, they gave in evidence a certified copy of the bond aforesaid, together with the account of the United States against the said J. H. settled at the treasury department, and duly certified according to law, whereby it appeared, that a balance of 29,266 dollars 6 cents was due to the United States by the said J. H., as paymaster of the rifle regiment of the army of the United States. Whereupon the defendant prayed the Court to instruct the jury, that if, from the evidence aforesaid, they should believe, that John Hall, named in the condition of the bond, had neglected and failed to make any report to the paymaster general once in two months, showing the disposition of the funds previously transmitted, with estimates for the next payment of the said regiment, and had also neglected and failed, either to transmit such estimates, or to render his vouchers to the paymaster general for settlement of his accounts, more than six months after receiving funds, and was not recalled for such default and neglect, but additional funds were placed in his hands, notwithstanding his known defaults and neglects in the instances aforesaid, then the defendant is not chargeable for any failure of the said J. H. to account for such additional funds so placed in his hands after his said defaults and neglects, in respect of the funds

previously received, were known as aforesaid. The Court gave the instruction as prayed; and, a verdict being found for the defendant, a writ of error was sued out to the judgment rendered thereon.

The counsel for the plaintiffs in error have rested their cause entirely upon the decision of this Court in the case of the *United States* v. *Kirkpatrick*, (9 *Wheat. Rep* 720.) and as we do not feel disposed to dissent from the opinion given in that case, it becomes material, in the first place, to inquire, whether the two cases are the same in principle or not. If they are, it will avoid the necessity of any general reasoning upon the point decided in this cause by the Court below.

The case referred to, arose upon the act of Congress for the collection of the direct taxes, and internal duties. The action was founded upon the collector's bond against the sureties; and one of the questions which came up for decision was, whether the failure of the comptroller to call the collector to account at the periods prescribed by law, and the consequent injury to the sureties, did not discharge them from their responsibility upon the ground of laches? By the 28th section of the above act, the comptroller of the treasury is required, in case any collector should fail to collect, or to render his account, or to pay over quarterly, or sooner if required, the moneys by him collected, immediately after such delinquency, to issue a warrant of distress against the delinquent collector, to be

*margin notes:*

1826.

The U. S.
v.
Vanzandt.

Present case not distinguishable from the United States v. Kirkpatrick, (9 Wheat. Rep. 720.)

1826.

The U. S.
v.
Vanzandt.

levied on his personal estate, and, in case that should prove insufficient to satisfy the warrant, then upon his real estate. The decision of this Court was, 1. That laches is not imputable to the government; and, 2. That the provisions of the law requiring settlements by its officers to be made at short periods, are designed for the security and protection of the government, and to regulate the conduct of those officers; that they are merely directory to the officers, and form no part of the contract with the surety.

The correctness of these principles is admitted by the counsel for the defendant; but they insist that they are inapplicable to the case of a surety in a paymaster's bond, because, by the 4th section of the act " for organizing the general staff, and making further provision for the army of the United States," if the paymaster fail to render his vouchers to the paymaster general for settlement of his accounts, for more than six months after his having received funds, the injunction of the act is imperative, " *that he shall be recalled,* and another appointed in his place."

Construction of the 4th section of the act of the 24th of April, 1816, c. 69. as to the liability of a paymaster's surety.

It is contended by the defendant's counsel, that this section leaves no discretion in the proper officer of the government to continue the paymaster in office after his delinquency, but that he ceases thereafter to be paymaster, and the responsibility of his sureties is terminated.

It must be conceded, that the injunction on the proper officer of the government to recall the delinquent paymaster, is expressed in very strong

language. But, whether the omission to per-
form the act, amounts, under every possible cir-
cumstance, to a breach of official duty, may ad-
mit of some doubt. May it not be excused in a
case where the paymaster has been prevented
from rendering hi. vouchers at the periods men-
tioned in the act, by causes acknowledged by the
government to have been beyond his control?
And, if it may, it would seem, that the ground of
excuse could not properly be made a subject of
judicial inquiry in an action against the surety.
It may further be remarked, that if it had been
the policy and intention of the legislature, that
the act of delinquency should be inexorably fol-
lowed by a removal from office, it might not be
unreasonable to presume, that such a conse-
quence would have been distinctly announced.
It is not, however, the intention of the Court, to
express any opinion upon this point, because,
whatever may be the duty of the proper officer
of the government in this respect, it must, we
think, be admitted, that until the paymaster is
recalled, he continues in office. The act au-
thorizes, perhaps requires, his recall, but it does
not displace him. The officer whose duty it
may be to recall him acts upon his own respon-
sibility to the government by declining to do so ;
but, until he acts otherwise, the paymaster is au-
thorized, notwithstanding his delinquency, to re-
ceive, and to disburse the funds which may be
placed in his hands.

The attempt to distinguish this from *Kirkpa-
trick's case,* is made upon the ground, that that

1826.

The U. S.
v.
Vanzandt.

was purely a case of laches, whereas, in this, an unauthorized act was done by the government in confiding funds to the disposal of a public defaulter, whom the government was bound by law to have dismissed from office. But, will it be contended, that the obligation to dismiss this officer was more imperative than that imposed upon the comptroller to call the collector of direct taxes to account at the periods prescribed by law, and in cases of delinquency, to pursue the summary remedy which the same law provided for the safety of the public, and, consequentially, for that of the surety? The neglect in the one case, and in the other, imputes laches to the officer whose duty it was to perform the acts which the law required; but, in a legal point of view, the rights of the government cannot be affected by these laches. The provisions in both laws are merely directory to the officers, and intended for the security and protection of government, by insuring punctuality and responsibility; but they form no part of the contract with the surety. If, then, the paymaster continues in office, notwithstanding the omission of the proper officer to recall him on the ground of his defaults, the act of placing funds in his hands to be disbursed according to law, is not one of which the surety can complain, since the public interest requires that the troops should be paid, which can be done only by the officer appointed for that purpose. If the neglect of the officers of government, from which the surety suffers, does not discharge him from his responsibility

in either case, it is not perceived how the placing funds in the hands of the paymaster, who continues in office, can have that effect, seeing that the latter circumstance is the necessary consequence of the former. If the law displaced the officer upon the ground of delinquency, the placing funds in his hands, after his removal from office, could not possibly be upon the responsibility of the surety, inasmuch as his undertaking was for the faithful discharge of the duties of his principal *as paymaster*, and, consequently, he is not bound for his acts after he has ceased to hold that office.   The whole argument of the counsel for the defendant proceeded upon the assumption, that the office terminated, *ipso facto*, as soon as the delinquency occurred, which, we have endeavoured to show, presents an incorrect view of the subject.

Whether, admitting that the surety could claim to be discharged from his responsibility, upon the ground assumed by his counsel, such a defence could be set up on the proceedings in this cause, is a question upon which the Court avoids expressing an opinion, because it is rendered unnecessary by that which has been pronounced, and because it was not argued at the bar.

The opinion of the Court is, that there is error in the judgment of the Court below, and that the same ought to be reversed.

Judgment reversed.