[SURETY.]

## The UNITED STATES *against* NICHOLL.

The act of May 15th, 1820, ch. 625. s. 2., which requires new sureties to be given by certain public officers on or before the 30th of September, 1820, does not expressly, or by implication, discharge the former sureties from their liability.

The sureties are not responsible for moneys placed by the government in the hands of the principal, after the legal termination of his office; but they are responsible for moneys which came into his hands while in office, and which he subsequently failed to account for and pay over.

In general, laches is not imputable to the government: But, *quære*, whether, in case there is an express agreement between the government and the principal, giving time to the latter, and suspending the right of the former to sue, the sureties are not discharged as in a similar case between private individuals?

A mere proposition to give time, and suspend the right to sue, upon certain conditions and contingencies, which are not proved to have been complied with, or to have happened, will not discharge the sureties.

The cases of the United States v. Kirkpatrick, (9 *Wheat. Rep.* 720.) and the United States v. Vanzandt, (11 *Wheat. Rep.* 184.) applied to the determination of the present case.

THIS cause was argued by the *Attorney General* and Mr. *Sampson* for the plaintiffs, and by Mr. *D. B. Ogden* for the defendant.

*Feb. 26th.*

Mr. Justice TRIMBLE delivered the opinion of the Court. *March 5th.*

VOL. XII. 64

1827.

U. States
v.
Nicholl.

The questions to be decided in this case arise out of a bill of exceptions, taken by the plaintiffs, to the charge and instructions of the Circuit Court to the jury upon the trial of the cause.[a]

The suit was founded on the official bond of Robert Swartwout, as navy agent, and with whom the defendant had become bound as one of his sureties. The bond bears date the 22d day of February, 1819; and is in the penalty of 20,000 dollars, with the usual condition, to be void if Swartwout should faithfully perform the duties of his office, and account for, and pay over, when required, the public property and money placed in his hands.

The declaration alleges, as a breach of the condition of the bond, that Swartwout's accounts had been settled by the proper accounting officers on the          day of
and that, upon that settlement, a large balance had been found against him, which he had failed and refused to pay over to the United States when required. The pleadings having been made up according to the practice of New-York, so as to put in issue the matters in controversy between the parties. the plaintiffs gave in evidence to the jury the bond, with its condition, and Swartwout's settled account, duly certified from the treasury department; and the defendant gave in evidence a letter from the Secretary of the Navy to Robert Swartwout, dated the 25th day of February, 1819; two commissions to Swartwout as navy agent, the one dated the 16th day of October, 1818, and the other the 30th day of November, 1818, and the following letter, dated the 8th day of December, 1823, from Mr. Pleasanton, agent of the treasury, to Mr. Tillotson, the district attorney, which will be more particularly noticed hereafter:

"*Treasury, Department, Fifth Auditor's Office,*
*December* 8, 823.

" Sir : From the best information I can obtain, it seems pretty certain that if we foreclose the mortgage given to the United States by General Robert Swartwout, and expose

---

a This cause was tried in the Court below by the late District Judge Van Ness.

the property to sale, subject to a previous mortgage given to Mr. Coster, we shall lose the whole, or nearly all of our debt; this property being our only reliance, if the sureties should be discharged by due course of law from their responsibility for the payment of it. Under these circumstances, the only alternative which presents itself for securing any considerable portion of the debt is, to allow General Swartwout time within which to make an advantageous disposition of the property. He expresses a confident belief that in seven years he would be enabled, by connecting it with a banking institution for which a charter has already been granted by the State of New-Jersey, not only to pay off the first mortgage, but our mortgage also.

" It has been recommended by the Navy Department to allow this time, and I have, accordingly, instead of three years, as intimated to you some time ago, determined to allow him seven years, provided the first mortgagee will pledge himself in writing, not to molest him for the same space of time ; and provided also, that the bank with which the property is to be connected, shall go into operation on or before the first of October next. Should the banking capital not be made up by the time mentioned, and the bank fail to go into operation, this agreement is to be considered wholly null and void. You will be pleased to take such steps as will give this arrangement effect.

" As the sureties on General Swartwout's bond dispute our right to recover the penalty from them, it will be your duty forthwith to institute suits against them in the Circuit Court, and judgment going against us there, you will remove the cause to the Supreme Court, it being very desirable that the law should be settled in relation to bonds so situated.

" I have the honour, &c

(*Signed*) S. PLEASANTON,

*Agent of the Treasury.*"

The Circuit Court decided, and, accordingly, instructed the jury, first, " That the defendant, Francis H. Nicoll, was not responsible for any defalcation that took place on the part of Robert Swartwout, as navy agent, subsequent to the

30th day of September, 1820, when, in and by the act of Congress, passed the 18th of May, 1820, new sureties were required by law to be given by the said Robert Swartwout. Secondly, "That the defendant was not responsible for any deficiency of public money reported on by the account-officers of the United States, subsequent to the 30th of November, 1822, when it appeared in evidence that the appointment of Robert Swartwout, as navy agent, expired by its legal termination.

Thirdly, "That he left it to them to decide whether the letter from S. Pleasanton, Esq. addressed to Robert Tillotson, Esq. which had been read in evidence before the jury, did give further time to Robert Swartwout for the payment of the debt due the United States; and that if, in the opinion of the jury, the letter in question did give time to the said Robert Swartwout until October, 1824, or any subsequent period, that then the defendant was discharged from his liability, and their verdict should be rendered for the defendant. And, lastly, that the said several matters so produced and read in evidence, on the part of the said Francis H. Nicoll, were sufficient, in law, to maintain the issue on his part, and that the United States ought not, upon all the matters produced in evidence, to maintain the said action," &c.

These several opinions and instructions, are brought before this Court for re-examination by the present writ of error.

The former sureties not discharged by the act of 1820,

Upon looking into the act of Congress, passed May 15th, 1820, entitled "An act providing for the better organization of the treasury department," which is the one referred to in the first instruction, we are satisfied it was misconstrued by the judge. The second section of the act provides a new and summary process against public defaulters and their sureties, after the 30th of September, 1820. The scope and design of the act, in requiring new sureties to be given by that day, was in order that, if such new sureties should be given, the summary process might operate upon them, as well as upon the principal, if the treasury department should elect to pursue such summary process. This is manifest from the provision in the act, that the summary process shall not affect the existing sureties.

1827.

U. States
v.
Nicholl.

The act no where directs the principals to be discharged from office, upon failure to give new sureties; and if the act had so directed, they would have remained in office until actually removed. The law does not, in terms, declare the existing sureties shall be discharged from and after the 30th of September, 1820. It would require a very strained construction of the statute to discharge them by implication, while their principals were permitted to remain in office. Such construction would be, we think, against the manifest intention of the legislature. The 10th section enacts, " that nothing in this act contained shall be construed to take away or impair any right or remedy which the United States now have, by law, for the recovery of taxes, debts, or demands."

The cases of the *United States* v. *Kirkpatrick*, (9 *Wheat. Rep.* 720.) and the *United States* v. *Vanzandt.* (11 *Wheat. Rep.* 184.) are, in principle, undistinguishable from this case.

They decide, 1st. That laches is not imputable to the government; 2d. that the provisions of the law requiring settlements by its officers to be made at short periods, are designed for the security and protection of the government, and to regulate the conduct of those officers; that they are merely directory to those officers, and form no part of the contract with the sureties. And the last case decides, 3dly. That where the act expressly directs a defaulting officer to be recalled at the expiration of six months from the time of his default, his sureties are not discharged, but remain liable for his defaults thereafter, until he is actually recalled.

If the second instruction given to the jury was intended to inform them that the defendant, as surety of Swartwout, was not legally responsible for money placed by the government in his hands, after the legal termination of his office, it was unquestionably correct; and this is the sense in which we suppose the Court meant to be understood. But if it was intended to convey the idea, that he was not responsible for money which came to Swartwout's hands while in office, but which he afterwards failed to account for and pay over, it was clearly incorrect.

1827.

U. States
v.
Nicholl.

Third instruc-
tion.·

In deciding·upon· the third instruction given, as to the effect and operation of Mr. Pleasanton's letter·to the District Attorney, it is not intended to give any intimation of what would· be the opinion of this Court, if it had appeared from the letter, that the government had· made any arrangement with Swartwout, without· the assent of his sureties, whereby the right of the .government to sue upon the bond had been suspended to the first day of October, 1824, or to any subsequent time. Nothing of the· kind appears from the letter. It speaks of a mortgage which had been given by Swartwout, upon property subject to a former mortgage to Mr. Coster; but it does not appear that, by the terms of the mortgage, the right to sue on the official bond was suspended; and the taking of a collateral security, without suspending the right to sue on the bond, could not bar the action on ` the bond. The letter speaks of an intention formed of giving time upon the mortgage, upon specified conditions ar.d contingencies; but none of those conditions or contingencies are shown to have been complied with, or to have happened. The letter contains no contract, and gives no time *per se*, upon any consideration binding on the government; and that the letter did not intend to·suspend the right of the United States to sue on this bond, is palpable, because it directs suit to be brought thereon immediately. As no fact, connected with the letter, was proved by evidence *aliunde*, the construction of the letter upon its face .was matter of law, and the. Circuit Court ought to have decided and instructed the jury accordingly, that nothing on the face of the letter constituted any defence to the ·action. There was nothing but the construction of the letter to be left to the jury, and the Court ought to have ·informed the jury that, according to its true construction, it did not give time so as to bar the action against the surety.

After the observations already made, it cannot be necessary to go into any further reasoning to show that the Circuit· erred in .its concluding instruction, that, upon the whole .matter, the-law was for the defendant. It was a conclusion drawn' by that Court from the premises it had assumed in the former instruction given, and the error of.these premises

having been shown, the error of the conclusion necessarily follows.

Some observations were made by the defendant's counsel in argument, as to the manner in which the debits and credits in Swartwout's account had been adjusted by the accounting officers; and he seemed to suppose, that credits which ought to have been applied towards the extinguishment or lessening of the debits, for money placed in his hands before the 20th of November, 1822, had been improperly applied to the transactions of Swartwout with the government after that day.

1827.

M'Gill
v.
Bank of
U. States.

The case of *The United States* v. *January & Patterson*, (7 *Cranch's Rep.* 572.) is in point to show, that, as to any disbursements of money after the 30th of November, 1822, for which Swartwout was entitled to credit, it was at the election of the government to apply them to either account. But there is no necessity for the application of the principle to this case; for, upon looking into the account, we find that, after crediting Swartwout with all his disbursements up until the 30th of November, 1822, there remained, on that day, a balance in his hands unaccounted for, much beyond the penalty of the bond; so that no injustice is done to the surety in the manner of settling the account.

Right of the government to apply the credits to either account.

Judgment reversed, and a *venire facias de novo* awarded.