The Court, (non. con.) on the 7th of June, 1827, rendered judgment for the plaintiffs upon the demurrers to the third, fourth, and sixth pleas.
The seventh plea was not filed until the subsequent term, namely, December 17, 1827. The question arising upon the demurrer to the rejoinder to the replication to this plea was, whether the six months given to the bank, in which to accept or reject the extension of their charter, by the Act of the 2d of March, 1821, were lunar months or calendar months. If calendar months, the acceptance was in due time; if lunar, it was not, and the charter had expired. From the 2d of March to 21st of August is 172 days; six lunar months, of four weeks each, is 168 days only.
The question arose out of the fourth section of the Act of Congress of the 2d of March, 1821, c. 18, [3 Stat. at Large, 618,] entitled “ An Act to extend the charters of certain banks in the District of Columbia;” by which it is enacted, “That unless the president and directors, for the time being, of each of the banks respectively whose charters are hereby extended, shall, on on behalf of their stockholders, and in virtue of an authority from them, or a majority in interest and number of them, file their declaration, in writing, in the office of the Secretary of the Treasury, within six months from the passage of this act, assenting to and accepting the extension of the charter hereby granted, under the terms, conditions, and limitations contained in this act, such bank shall forfeit all title to such extension of charter.”
Mr. J. Dunlop, for the plaintiffs. In the case of Lacon v. Hooper et al. 6 T. R. 224, Lord Kenyon regretted that the old decisions obliged him to say that it must be understood to be lunar months. This was upon an Act of Parliament giving premiums to certain vessels who should remain out upon fishing voyages, in certain high latitudes, for a time not less than fourteen months from their clearing out. But the Act of Congress, extending the plaintiffs’ charter, is upon a mercantile sub- *223 je'ct; and even in England, in a statute upon such subjects, the computation is by calendar months. 2 Bl. Com. c. 9, p. 141, Christian’s note. So in ecclesiastical cases, respecting presentations, because the Church calculates by calendar months; and one reason given by Lord Coke is, that it may support right. Catesby's case, 6 Co. 62.
In Maryland, from the year 1715 to the year 1779, the six months for the enrolment of deeds had been considered as calendar months, as appears by the preamble to the Act of November, 1779, c. 10, which was enacted to remove the doubts which had “ arisen in some of the courts of justice ” in that State; and declares, “ that in all cases where the enrolment of deeds is directed by law to be made within six months from the day of the date of the same deeds, the said months shall be deemed and taken, and are hereby declared to be calendar months.” The same mode of computation prevails in Pennsylvania. In New York, however, the computation is by lunar months. But in South Carolina, Massachusetts, Kentucky, and Tennessee, the computation is by calendar months. Starkie, Part 4, p. 1398, note; 2 Mass. Rep. 170, note; Avery v. Pixley, 4 Mass. Rep. 460; Brudenell v. Vaux, 2 Dall. 302; Commonwealth v. Chambre, 4 Dall. 143; Loring v. Halling, 15 Johns. 119; Stackhouse v. Halsey, 3 Johns. Ch. R. 74.
Mr. Worthington, contra:. The meaning of the word “ month,” at the common law, has been settled by a long course of judicial decisions, from the earliest times. 2 Bl. Com. c. 9, p. 141; Tullett v. Linfield, 3 Burr. 1455; Lacon v. Hooper, 6 T. R. 224; The King v. Adderley, Doug. 463; Talbot v. Linfield, 1 W. Bl. 450.
This is the general rule; the other cases are exceptions. Catesby’s case rests on the word “ half-yearly.” So in the cases where the word quarterly is used. Leffingwell v. White, 1 Johns. Cas. 100; Jackson v. Clark, 7 Johns. 217; Biddulph v. St. John, 2 Sch. & Lef. 521; Rex v. Bellamy, 1 B. & C. 500.
In Pennsylvania, the court decided upon the phraseology of the statute.
In acts of Congress, generally, the legislature has distinguished and expressly mentioned calendar months, when they meant calendar months; as in the Collection Act of March 2, 1799, § 75, [1 Stat. at Large, 627,] the Act of April 20, T818, c. 124, §§ 1, 2, 3, [3 Stat. at Large, 466,] the Act of April 10,1816, § 3, [3 Stat. at Large, 266,] incorporating the Bank of the United States; and the original charter of the plaintiffs’ bank, February 18, 1811, § 4, [2 Stat. at Large, 636.]
Mr. Jones on the same side. The Act of 1779 confines the *224 construction to the old Act of Enrolment of 1715. There is in law no lunar year. Parts of a year, such as a half or a quarter, mean parts of a solar year. The subject-matter of the statute cannot control the general rule. Catesby’s case depended upon the words tempus semestre, which, says Lord Coke, “ being spoken in the singular number, (as it appears by the dictionaries,) signifies half a year, or six months, namely, such six months as make half a year; and there is a great difference in our ordinary speech between the singular number, as a twelvemonth includes all the year, according to the calendar; but twelve months shall be reckoned according to twenty-eight days to each month.” Another reason for the judgment in Catesby’s case, as stated by Coke, is, that “ verba accipienda sunt secundum subjectam materiam; and because this computation of months concerns those of the church, there is great reason that the computation should be according to the computation of the church, which they best know.”
If this new charter had spoken of months in relation to the discount of notes, &c., there might be some ground for the exception. But this language is not applied to a mercantile act, and has nothing to do with the law-merchant. Congress, in legislating upon commercial subjects and mercantile persons, still use the word calendar, when they mean calendar months; leaving the inference that “ month ” alone means lunar month.
Mr. Key, in reply.- This is an American act of Congress, legislating for this District as a substituted legislature for that of the State of Maryland. It is true that, in an English act of Parliament, the word “ month ” means, generally, a lunar month; but that is no reason why the same construction should be given to an act of Congress,- there being no common law of the United States. Under a Maryland statute, the computation would be by calendar months ; as in the case of supersedeas under the Act of 1791, c. 67, § 1, where the two months and the six months have always been construed to mean calendar months. So ■ also in the Statute of Enrolment of Deeds ; so also in the charter of the Bank of Columbia, &c.
If the construction be doubtful, it ought to be against a forfeiture, and in affirmance of the right. One of the reasons for the judgment of the court, as stated by Lord Coke, 6 Co. 62 a, is, that “ when the computation is doubtful, it is good to determine it for the relief and remedy of him who hath right, and, for the advantage of right, to give him the longest time, to the end that he lose not his fight.”
The CouRT (nem. con.) was of opinion that the legislature meant to give the bank six calendar months to file their accept- *225 anee of the extension of their charter; and CRanoh, C. J., in •delivering the judgment of the Court, observed, that it is probable that the common law construction of the word months, as meaning lunar months, was never adopted in Maryland, and that it seemed to be quite obsolete, in regard to the common business of life, in this country; that the act of Congress is addressed to bankers, mercantile men, who always compute by calendar months; and that it is probable that the legislature intended to allow the same kind of months as they had mentioned in the original charter.
Upon this demurrer the Court rendered judgment for the plaintiffs.
Upon the trial of the issues, after the plaintiffs had given in evidence the teller’s bond, and proved the deficit of his accounts to the amount of , and the acceptance of the extension of the charter,
Mr. Jones, for the defendant, moved the Court to instruct the jury that the plaintiffs could not recover upon that evidence; and contended that the bond, being given under the original charter, did not cover any defalcations occurring under the extended charter; and that it was necessary to prove the appointment of the teller by the acts of the President and Directors.
But the Cotjkt (nem. con.) refused to give the instruction; being of opinion that there was sufficient evidence of the acceptance of the extension of the charter, under the Acts of May 4, 1820, and March 2,1821, and that the condition of the bond extended to defalcations occurring in January, 1822; and that the Union Bank, in 1822, was the same Union Bank which existed at the date of the bond.
The CouRT permitted evidence to be given by the defendant, to show that there might be an apparent balance against the defendant, and yet the plaintiffs not damnified; it being possible that such apparent balance might arise from error in accounting, and not in the actual transaction.
Mr Jones, for the defendant, then prayed the Court to instruct the jury, in effect, that the appointment of teller must have been from year to year, and that an interval of three days between the end of one year and his reappointment for the next year, (during which three days however he continued to act as teller,) destroyed the right of the plaintiffs to recover upon the bond for damage incurred, after such interval, by the want of care of the defendant; and also that the obligation of the bond ceased on the 4th of March, 1821, the day on which the charter of the bank would have expired if it had not been extended by the Acts of 1820 and 1821.
*226 But the Court {nem. con.) refused to give the said instruction. *
Mr. Key, for the plaintiffs, then moved the Court to instruct the jury that the defendants are bound under their contract with the plaintiffs contained in the said bond, to save them from all loss arising from any want of care of the said teller; and that if mistakes were made by the said teller, in his business as teller, by which the said money was lost, and which loss, by any degree of care on the part of the said teller, in his office, could have been avoided, the defendants are liable therefor on the said bond.
Mr Jones, contrct. The degree of care is not stated in the bond. It means reasonable care; such as a prudent man would use in his own affairs; such as a bailee for hire is bound to use.
Mr. Worthington, on the same side, cited the following authorities, as to the obligation of a bailee for hire. Finucane v. Small, 1 Esp. Rep. 315; 1 Gow, Rep. 30; Peake’s N. P. C. 114.
The Court, (Morsell, J., doubting,) gave the instruction as prayed, observing that in the cases of bailment, the parties are supposed not to have made any express contract as to the extent of the liability of the bailee, and therefore the law fixes his liability for him. But here the parties' have entered into an express contract upon the subject; and the court can only construe that contract according to its legal force and effect.
To this instruction the defendant’s counsel took a bill of exceptions, which stated that the defendant objected to the instruction, “understanding it to be intended so to construe.the bond as to exact of the defendant a kind and degree of care, beyond the reasonable and proper care which a prudent, cautious, and careful man would have exerted, or should be presumed to exert in his own affairs in the like case; and therefore the defendants requested the Court so to modify the instruction requested by the plaintiffs, as to have it understood by the jury that a neglect of no other or higher kind or degree of care than the ordinary and reasonable care which a prudent, cautious, and careful man would have exerted, or should be presumed to exert, in his own affairs, in the like case, could be imputed to the defendants in this action, in so far as the plaintiffs seek to charge them for a loss occasioned by want of care. But the Court, being of opinion that the condition of the bond stipulated for a different and higher degree of care than the ordinary care required of agents, clerks, or bailees, who have not expressly contracted to be liable for want of care, therefore gave the instruction requested by the plaintiffs as above, without modification; and rejected the modification proposed by the defendants as above, to which also the defendants excepted.
*227 Mr. Jones then prayed the court to instruct the jury in effect, that the neglect of the cashier to settle, the daily accounts of the teller, whereby the risk of error was increased, discharged the sureties in this bond. United States v. Van Zandt, 11 Wheat. 187; The People v. Janson, Johns.
Mr. Key, contrá, cited The United States v. Kirkpatrick, 9 Wheat. 720, and The United States v. Nicholl, 12 Wheat. 509.
The Court (nem. con.) refused to give the instruction. Mr. Jones then moved the Court to instruct the jury, “ that if they find from the .evidence that according to general bank usage, no other or higher land or degree of care was required of tellers or other bank officers, in the transaction of the bank business, than what a prudent, cautious, and careful man would exert in his own affairs^ and in the like case; and ■ that the plaintiffs themselves had, for several years before the claim was set up by them in this case, tolerated and accepted of the said Forrest without complaint, a discharge of his duty as.teller, with no other or higher kind or degree of care than as aforesaid; then it is competent for the jury to presume that the plaintiffs dispensed the said Forrest and his sureties from' any other or higher kind and degree of care than as aforesaid; and in such case the plaintiffs are not entitled to recover in this action, any loss, as for the want of care of the said Forrest; unless they prove to the satisfaction of the jury that he failed in the instance complained of, in such reasonable and proper care as a prudent, cautious, and careful man would have exerted, or-should be presumed to exert, in the like case.”
But the Court (nem. con.) refused the instruction, because the evidence, as they thought, did not warrant the jury in inferring such usage, or such toleration; and because such usage, if proved in regard to banks who have not taken security against damage sustained by “ want of care ” of the teller, would not control the express stipulation to indemnify a bank for such damage, and because the instruction prayed would throw the burden of proof of negligence upon the plaintiffs, the bank, after they had shown that he had received money which he had not accounted for.
Verdict.for the defendants; motion for new trial overruled; judgment for the defendants.