*BOUI/DIN, J.,
delivered the opinion of the court.
The appellee, Holmes, was surety for one Barham, who qualified as collector of Berlin and Ivor township, in Southampton county, for the year commencing July 1, 1871, and ending July 1, 1872. At the time of Barham’s qualification, and when he gave the bond with Holmes as surety (which was a new bond required by the County court), the taxes for that jrear went into the hands of the collector on the 1st of September 1871, and were to be accounted for to the county treasurer on the first of December following, and for default of duty in this respect, legal proceedings were to be instituted by the said treasurer. Subsequent to the execution of the bond aforesaid, and whilst Barham was in office, there were sundry extensions by joint resolutions and by statutes of the general assembly, of the time within which the collector should make his settlements with the county treasurer, without the assent of his surety; and the question before us is, what is the effect of these extensions on the obligation of Holmes as surety?
It was contended for Holmes, and was held by the Circuit court, that all the provisions of the statute on this subject, existing at the date of his bond, entered into and formed a part of his contract as surety, and that the extensions referred to being made without his consent, discharged him from his obligation. Is this law?
It is unquestionably true, as a well established principle of equity law, that a surety can only be held bound by his contract as he made it, and that he will be discharged if, by any binding agreement for indulgence to his principal or otherwise, his contract is materially altered or varied by the creditor without his ^consent. And it is also true that this principle applies alike to sureties in official bonds and private obligations. The contract of the surety cannot be so varied or extended in either case without his consent. What the contract really is becomes then the all important inquiry. When that is ascertained the application of the principle is without difficulty.
In cases of suretyship, in private and individual obligations for the payment of money, there can rarely arise any serious difficulty as to the nature and extent of the surety’s liability. But when, as here, his obligation is that a public officer shall discharge his duties according to law, the delicate and important question at once arises, what is that law according to which the officer is to discharge his duties? The ap-pellee’s counsel insist, and cite authority to show, that it is the law existing at the date of the contract, and that alone. No Virginia authority had been cited to that point; and a just interpretation of the words, and *557 a due regard to the nature and object of the bond and the office would perhaps justify us in holding that the condition of the bond was to secure the due discharge by the officer of all such reasonable duties gertnain to the office as might be imposed by law during his continuance therein; that the legislature could not have intended by taking bond to secure the public interest, to deprive itself of the power of otherwise contributing to the same end in a proper way without first obtaining the consent of the surety. It would perhaps not be unreasonable to hold, under such a bond as this, that the legislature had not intended to do, and had not done an act so inconvenient and indeed so prejudicial to the public interest.
But without deciding that proposition, and conceding, as a general rule, that the law at the date of the *contract is the law, and the only law, which enters into and forms part of the sureties’ contract, the question again arises, what part of that law is it which enters into and forms part of the sureties’ contract?
For the purpose of this case that question may be more conveniently answered by showing what kind of laws do not enter the sureties’ contract.
haws, then, merely directory to the officers of government, requiring that settlements shall be made at short and stated periods “are provisions of law created by the government for its own security and protection, and to regulate the conduct of its own officers. They are merely directory to such officers, and constitute no part of the contract of the surety.” Mr. Justice Story delivering the opinion of the Supreme court in United States v. Kirkpatrick, 9 Wheat. R. 720, 736-7.
In the United States v. Vanzandt, 11 Wheat. R. 184, Mr. Justice Washington, delivering the opinion of the court, confirms the authority of the U. S. v. Kirkpatrick; and speaking of analogous provisions made in that case for the safety of the public, he says, p. 190, “The provisions in both laws are merely directory to the officers, and intended for the security and protection of g-overnment, by insuring punctuality and responsibility; but they form no part of the contract with the surety.”
The same principle is reaffirmed in United States v. Nicholl, 12 Wheat. R. 509, and United States v. Boyd & others, 15 Peters R. 187, 208. In the last mentioned case Mr. Justice Catron says for the court: “The regulations requiring settlements to be made by its officers at short periods, are designed for the protection of the government, and merely directory to the officers, and form no part of the contract. Such is the settled *doctrine of this court as holden in The United States v. Kirkpatrick, 9 Wheat. 720; The United States v. Vanzandt, 11 Wheat. 184; and The United States v. Nicholl, 12 Wheat. 509.”
The force of these principles have been attempted to be averted by the counsel for the appellee, by showing that the question directly decided in each of the cases involved laches merely; and not a change or violation of the sureties’ contract. That is true; but it is equally true, that in order to reach that question it became necessary for the court to inquire and decide what the contract of the surety really was; and it was held unanimously in all the cases, that these directory regulations for prompt settlements were regulations for the protection and security of the government, and formed no part of the contract of the surety. Forming no part of that contract, it follows as a necessary consequence, that like any other act of a like nature, the provision may be extended, altered or repealed at the will of the legislature, and without the assent of the surety, looking alone to the public interest. And we think, as a general rule, that what in such a case will advance the public good, will at the same time protect the interest of the surety. Indeed the indulgence granted to the officer by the extension of time in this case, is not a contract, but is an ordinary act of legislation for the public good, with no consideration for the extension moving from the officer; and is repealable at the will of the general assembly. Such extension was held, and we think correctly, by the Supreme court of Maryland, in the case of the State v. Carleton &c., 1 Gill R. 249, 258, not to operate as a discharge to the .sureties. “The law was not considered as binding or obligatory upon the state, but alterable *by the legislature at their pleasure, whenever the interest or convenience of the state might require it.” And this we think is the law of the case.
Several cases in the English courts have 'been cited in seeming conflict with these views. Were that actually so, we would not hesitate to disregard their authority, however high may be our respect for the source from which they come. But when carefully examined, these cases will be easily distinguished from the case in judgment. They were cases in which such new and additional duties were imposed on the officer as to make the office itself, in the opinion of the court, a new office, to which, of course, the contract of the surety did not extend. This is merely the conceded doctrine that you cannot enlarge or materially vary the surety’s contract without his consent.
Two cases from the Supreme court of Illinois, reported in first and second Gil-man, which seem to be very much in point, have also been relied on for the appellee. On these cases we will only say, that they seem to be in conflict with the principles established by the Supreme court of the United States and the Supreme court of Maryland in the cases above cited; and we think the latter the better law, and approve them.
But it was further argued, that the act of the 19th of March 1872, superadded tbe duties of constable, in relation to the collection of small claims, to the duties of collector as existing at the date of the bond, and thereby *558 clearly varied the contract of the surety and discharged him, under the authority of Pybus v. Gibbs & als., 88 Eng. C. L. R. 902, and other English cases cited.
It may be enough to say that the act referred to was general, and in its nature prospective. But in the particular ^addition of duty relied on, it is so in express terms. It is provided expressly that in this respect the act shall be effective from the first of July thereafter, that being the date of the legal expiration of the then existing term of the collector’s office, and the commencement of the term of a newly elected collector, whose bond would cover these new duties. This plainly manifests a purpose on the part of the general assembly to avoid interference with existing rights of sureties to the bond; and it will be found also that the duties thus devolved on the collector after the 1st of July 1872 were, from the same date, taken from the constable; both acts showing that existing obligations were not intended to be affected by the change of duties.
But it might perhaps be said that it may be reasonably concluded in this case that the old collector held over, as there is in the record no evidence of a new qualification of collector, and in that event his duties were, after the 1st of July, 1872, the duties imposed by the act of March 19, 1872; and these duties being such under the English authorities as would discharge the sureties, the surety in this case is discharged, whether the default was a failure to discharge the new duties not covered by the bond or the old duties which were protected by the bond. Such seems to be the result of Pybus v. Gibbs &c., and the other cases cited from the common law reports. The principle thus affirmed by the English decisions does not commend itself to the judgment of this court as just and reasonable, and we should hesitate to follow it were there no authority against it, but we have against it the opinion of the Supreme court of the United States in the case of United States v. Kirkpatrick, 9 Wheaton, already cited, in which in an analogous case Judge Story says, *the bond should be held good to the extent of the duties lawfully covered thereby. This, we think, the more just and equitable rule. It would seem to be unreasonable to hold that an obligation ample and valid to secure the due performance of duties should be avoided as to those duties by reason of an ineffectual effort by statute to engraft on it other duties. It would seem reasonable in such case to hold the statute void and the bond good.
Decree reversed.