JESSE COLLINS *v.* D. W. KNIGHT and others.

April Term., 1876.

GUARDIAN BONDS — LIABILITY OF SURETIES. — The sureties upon the bonds of a guardian, given every two years as required by statute, are all liable to the ward for the guardian's official delinquencies, even though, as between themselves, their liability be in the inverse order of the execution of the bonds.

JOINT DECREE AGAINST SEVERAL, ONE OF WHOM WAS THEN DEAD. — Although a decree or judgment taken against a person by name, then dead, jointly with others, may be void as to the dead man, it would *primâ facie* be good as to the other defendants.

BILL WITH INCONSISTENT PARTS. — A complainant may, in certain cases, frame his bill with a double aspect, but he cannot, with full knowledge of the facts, seek alternative relief on inconsistent grounds.

FRAUD.— A party cannot be held guilty of fraud by merely taking such a judgment as he was entitled to against a defendant who makes default, nor because the defendant may have been misled by the clerk or the sheriff in some particular.

*Hicks & Helms*, for complainant.

*N. D. Malone*, for Ella Collins.

*John Reid*, for Drake & Jordan.

THE CHANCELLOR : — The bill discloses this state of facts : On March 4, 1863, the defendant D. W. Knight was appointed and qualified as the guardian of John and Ella Collins, the complainant and S. S. Knight becoming the sureties on his bond. On March 4, 1865, D. W. Knight renewed his bonds, with the same sureties. On May 11, 1867, he again gave new bonds as guardian, with the defendants H. C. Drake and J. H. Jordan as his sureties. On April 22, 1873, John and Ella Collins, by Cheney Collins, their next friend, filed their bill in this court against D. W. Knight as guardian, and S. S. Knight and complainant as his sureties on the bond of March 4, 1863, to remove the said D. W. Knight from the guardianship, and for an account ; and such proceedings were had that, on November 9, 1875, "the said complainants in said bill took a judgment or decree" against said D. W. Knight, and complainant as his surety, for $996.37 and costs. On or about July 1, 1875, John Collins died ; and although, as the bill says, the fact "is shown by the papers in said cause," no administrator has ever been appointed to represent him, or any revivor had in the name of a representative.

Upon these facts, as a common basis for the relief sought, the bill is filed in a threefold aspect :

1. As an original bill in the nature of a bill of review, to set aside the decree of November 9, 1875, for the want of necessary parties, and because obtained by fraud.

2. As an original bill to suspend the execution of the said decree until the judgment-creditors have first exhausted their remedy against the sureties on the guardian-bond of May 11, 1867.

3. As an original bill to have the benefit of the judgment as against D. W. Knight, and the sureties on the bond of May 11, 1867, and to this end the complainant prayed and obtained an attachment against the estate of the said D. W. Knight, upon the ground that he had fraudulently disposed of certain property to hinder and delay his creditors, and the property described has been attached.

Ella Collins has answered this bill, by her guardian *ad litem*, denying the matters of fraud relied on; admitting the death of John Collins as charged, and asking for a dissolution of the injunction.

The defendants H. C. Drake and J. H. Jordan have filed a demurrer to the bill, assigning various causes.

Upon the answer of Ella Collins, the question of the dissolution of the injunction becomes one of law. The first position of the complainant is that the infants were required to go against the sureties upon the last bond, in the order of time, executed by their guardian, before they could sue upon an earlier bond; and that, not having done so, the complainant, as the surety on such earlier bond, is entitled to stay execution against him until the remedy against the later sureties is exhausted. The argument upon which this position is sought to be rested is that the renewed bond extinguishes the previous bond; or, at any rate, subordinates the liability of the sureties on the first bond to that of the sureties on the new bond. I do not so understand the law. The giving a new bond during the same official term is not a satisfaction of the old bond, nor a discharge of the sureties for either past or subsequent defaults of the principal. *Oats* v. *Bryan*, 3 Dev. 451; *Bell* v. *Jasper*, 2 Ired. Eq. 597; *Postmaster* v. *Reeder*, 4 Wash. C. Ct. 678; *United States* v. *Nicholl*, 12 Wheat. 505. The statutes, brought into the Code, sec. 2499 *et seq.*, were construed by the Supreme Court in *Jamison* v. *Cosby*, 11 Humph. 276, and they were held not to release the previous securities by the provision requiring the renewal of guardian-bonds. The liability of

such previous sureties continues, unless they are released under the provisions of law specially enacted for that purpose. Code, sec. 3672 *et seq*. "The new sureties are cumulative to the former, and so, upon each renewal, the sureties are cumulative." It is added, however, in language which has doubtless misled the learned counsel for the complainant, "They are not liable to suit or action at the same time, or to make payment at the same time, but are liable in the order indicated by the statute,—that is, the last sureties taken under the statute shall be first liable, and so on in that order." The idea intended to be conveyed by the learned judge was simply that in equity, under the statute, the sureties would be liable *inter se* in the inverse order of the execution of the bonds. He did not mean to say that the ward must sue them in that order, for that would have been directly in conflict with what he had just said, that the liability of the former sureties continues; and with a uniformly recognized principle of our laws, that a creditor may sue any one or more persons liable to him for the same demand without joining any others unless he sees proper. Obligations are, by statute, joint and several, and each obligor may be sued, at the election of the creditor, without regard to their liability *inter se*. The ordinary case of a suit against the surety without joining the principal at all is a familiar example. Whatever may be the rights of the surety as against the principal, or to subrogation to the creditor's rights, he cannot delay the creditor until the principal has first been exhausted. And to hold the law to be otherwise in the case of infants whose guardian-bonds have been renewed would be to deprive them of the benefit of the general law, and turn what was intended as an advantage to them into an injury. There is nothing, therefore, in this position of the bill, to sustain the injunction. And so I understand the decision of the Supreme Court to be in the recent case of *The State* v. *Parker*, Com. Leg. Rep., July 5, 1876.

The second position of the complainant is that the decree, taken after the death of John Collins, was irregular or void. The weight of authority in this state certainly is that a judgment or decree either in favor of or against a deceased party to a suit is an absolute nullity. *Morrison* v. *Deaderick*, 10 Humph. 342, 343. Our decisions are, upon this point, in conflict with the weight of judicial authority elsewhere. Freem. on Judg., sec. 140, 153, and cases cited. But this can be literally true only where the judgment is for or against the dead person alone. A joint judgment in favor of or against such persons and other persons would stand upon a different ground. A joint judgment in favor of several implies a joint right, which might survive. Such a judgment cannot be a nullity *in toto;* at most, it could only be avoided to the extent of the interest of the deceased, and not then, in equity, unless the person seeking to take advantage of the fact can show merits. Equity will not deprive parties of a legal advantage obtained by the course of the court, except for a clearly meritorious object. *Scott* v. *Nesbit*, 2 Bro. C. C. 641; *s. c.,* 2 Cox, 183; *Cain* v. *Jennings, supra,* p. 131; affirmed on appeal, 2 Tenn. Leg. Rep. 108. The allegation in this bill is that " the said complainants in said bill took a judgment or decree," which implies a joint judgment. To sustain a bill of review, or an original bill in the nature of a bill of review, the allegations must be such as to specifically show the error or wrong complained of. The present bill is defective in this regard, and does not contain sufficient facts to sustain the injunction on this ground against the defendant Ella Collins.

Besides, the complainant has himself, in another aspect of his bill, treated the judgment as valid, by asking to be subrogated to the creditors' rights, and suing out an attachment based upon it. This is a waiver of any defect or irregularity in the judgment. For, otherwise, the complainant would be allowed to assume, in one and the same

bill, the utterly incompatible positions that a decree was and was not valid. Undoubtedly a complainant may, in certain cases, frame his bill with a double aspect, where it is doubtful what relief he may be entitled to on the facts, or where the nature of the relief to which he is entitled depends upon the existence or non-existence of facts or circumstances not within his knowledge, but known to the defendant. He cannot pray a particular relief which is entirely different from the case. *Grimes* v. *French*, 2 Atk. 141. Nor can he seek alternative relief, where there is no ignorance as to facts, when the different parts of his bill are inconsistent with each other. *Lloyd* v. *Brewster*, 4 Paige, 537; *Colton* v. *Ross*, 2 Paige, 397; *Coleman* v. *Pinkard*, 2 Humph. 190.

Another ground upon which the complainant seeks relief as against Ella Collins is that the decree was obtained by fraud. This part of the bill is rested upon the fact, as charged, that the complainant, when he was served with *subpœna* to answer the bill, as he admits he was, was informed by the officer that the complainants "only wanted him to tell how much money he had paid the guardian," and when he went to the office of the clerk and master to know what was wanted with him, he received similar information. But it is obvious that the complainants in the original suit had nothing to do with the information thus received. The officer was their agent only to execute the writ, and the clerk and master to issue it. Neither had any authority to bind the complainants by any information they might have chosen to give. It was the duty of the present complainant, then defendant, to have examined the bill for himself, and it was gross carelessness not to have done so. And a party cannot be held guilty of fraud by merely taking such a judgment as he was entitled to against a defendant who makes default.

The injunction sued out cannot be sustained, and must be dissolved.

The equity of the bill as against Drake and Jordan is, that they are liable in the first instance for the delinquencies of D. W. Knight as guardian, having gone upon the last bond executed by him on May 11, 1867. This equity is unquestionably recognized by *Jamison* v. *Cosby*, 11 Humph. 276, and, although the language of the Code differs from that of the original act, seems also to be recognized in *The State* v. *Parker*, *ut supra*. This equity is not met by the demurrer. I think the bill does sufficiently charge that the decree of November 9, 1875, was recovered against D. W. Knight for official delinquencies as guardian. And it is clear, from the decision cited, that it is immaterial to the liability upon the last bond whether the delinquencies were committed before or after the execution of that bond. The bill does not show that the recovery was for the failure of the guardian in not collecting from the complainant the annuity of the infants. And although the demurrants are not implicated in any fraud charged in the bill, that fact would have no bearing on their primary liability on the last bond. These rulings cover all the causes of demurrer assigned, and the demurrer must consequently be overruled.