## UNITED STATES v. NOOJIN.

(District Court, S. D. Alabama, N. D. August 9, 1907.)

No. 1,251.

1. JUDGMENT—EFFECT OF CONDITIONAL ORDER SETTING ASIDE.

A final judgment was rendered on an appearance bond given by the defendant in a criminal case. Subsequently a motion was made to set aside such judgment, and an order was entered sustaining the motion on condition that the costs in the case should be paid within 60 days, which was not done. *Held*, that such order did not supersede the judgment, but merely suspended it for 60 days, and that an execution was properly based on such judgment, and not upon the subsequent one.

2. UNITED STATES—ENFORCEMENT OF JUDGMENT—DEFENSE OF LACHES.

The right of the United States to cause execution to be issued on a judgment in its favor in a purely governmental suit, such as an action on an appearance bond given by a defendant in a criminal case, is not barred by limitation, nor by the laches of its officers in failing to have such execution issued until more than 10 years after the judgment was entered.

On Motion to Quash Execution.

The facts in regard to this matter, which appear by the records of this court, are succinctly as follows: In the year 1891, one J. J. Burns being prosecuted criminally to answer an indictment against him in this court, made an appearance bond. J. H. Hughes and J. T. Noojin (movant here) were sureties on this bond in the sum of $300. At the fall term of this court in 1891 a judgment nisi was taken on this bond against the principal and these sureties, and notice was issued to each of them as required by law. At the spring term of this court in 1892 the defendant Burns was tried and acquitted. On March 10, 1892, the judgment nisi was made final for the full amount of the bond and costs. On October 5, 1892, on motion of the

defendant J. J. Burns, the judgment final was set aside on condition that the costs be paid in 60 days; otherwise, execution to be issued for the whole judgment rendered. It not appearing that these costs were paid, an execution on the original judgment was issued on May 14, 1892, and another execution was issued on January 28, 1893; but these executions do not appear, from the records, to have been acted upon in any manner. They became functus by nonaction. The principal on this bond and one of his sureties, to wit, J. A. Hughes, are now dead. No further action was had by the United States until July 16, 1906, which was 14 years and 4 months after the rendition of the original judgment, when an execution was issued from this court and was about to be levied on the property of the movant, Noojin. To that execution he filed a motion to quash, but that motion was never heard by the former judge of this court; and, no order being made in relation thereto, both execution and motion became defunct. Now another execution has been issued upon the original judgment rendered, and the movant, Noojin, moves to quash this execution, because it was issued upon a dormant judgment, and, further, because said execution was not predicated upon a valid judgment. It is further contended that the execution was issued upon the wrong judgment, being issued upon the judgment of March 10, 1892, instead of the judgment of October 5, 1892. The grounds of the motion were also stated in other ways, but these two were sufficient to present the issues here involved. Neither the judgment nor the costs are shown to have ever been paid.

Culli & Martin, for movant.
O. D. Street, U. S. Dist. Atty.

HUNDLEY, District Judge (after stating the facts). There can be no question about the execution being issued upon the right judgment. The conditional judgment, which had been previously rendered against the principal and his sureties, was, after due and legal notice to them, made final on the 10th day of March, 1892. On the 5th day of October, 1892, the following judgment was entered, to wit:

"This cause coming on to be heard upon the motion of the defendants to set aside the judgment final heretofore entered herein at a former term of this court, and after being argued by counsel and duly considered by the court, it is ordered that said motion be, and the same is, hereby granted, upon the condition that the defendants pay the costs of the sci. fa. herein within 60 days from the date hereof; otherwise, execution will issue for the whole amount of the judgment as heretofore rendered."

The effect of this last order or judgment was to bring into full force and effect the judgment of March 10, 1892, immediately on failure to pay the costs of the sci. fa., as conditioned in the order of October 5, 1892. This last order did not supersede the judgment of March 10th, but only suspended that judgment for 60 days, for the benefit of this movant and the other obligors on the bond. It cannot be seriously questioned that, if execution had been issued on the judgment of March 10th at the expiration of the 60 days provided in the judgment of October 5th and failure to pay the costs, such execution would have been to all intents and purposes a binding, valid, and enforceable execution. Of this proposition I have no doubt. This status of this matter being fully justified by the records of this court, we are then confronted by the really decisive question in the case, to wit:

Can this movant now be permitted, in the manner here attempted, to take advantage of the failure of the government's agents for more than 10 years to cause execution to be issued on the judgment of March 10th, and to enforce that execution? Does or does not the

maxim, "Nullum tempus occurrit regi," apply in the case at bar? The general proposition is well stated, in 19 Am. & Eng. Encyc. of Law (2d Ed.) p. 188, to be as follows:

"The prerogative of royalty in regard to the limitations of actions extends to republican governments, and the maxim, 'Nullum tempus occurrit regi,' applies in the United States, both as to the federal government and as to the several states, except where express statutory provisions to the contrary exist."

This general principle is amply sustained by the multitude of authorities, both state and federal, cited in the note to the text. It is true that in cases where the government or the state is the nominal party, and not in fact the real party in interest, this maxim and rule of the law does not apply. But such is not the case here. The effort is here made to prevent the United States from enforcing a judgment, secured in its own courts, for the sole benefit of the government. Every penny of the judgment, when collected, will become eo instanti the property of the United States. The negligence of the agencies of the government in failing to enforce the judgment and execution cannot be of avail to this movant here. The government is seeking the enforcement of its own rights, and is not, therefore, bound by any statute of limitations, nor barred by any laches of its officers, however gross. United States v. Southern Pac. R. R. Co. et al. (C. C.) 39 Fed. 132. "The United States is not subject to any act of limitation." United States v. Johnson, 124 U. S. 236, 8 Sup. Ct. 446, 31 L. Ed. 389.

The purport of this motion is nothing more nor less than an effort on the part of this movant to stay the hand of the sovereign in its effort to enforce a public right and to assert a public interest. The general rule that laches is not imputable to the government is essential to the preservation of the interests and prosperity of the public. This rule is founded upon the highest grounds of public policy, and any other doctrine would be ruinous in the extreme. All the property of the United States is held in trust for the people, and it is now well settled, upon grounds of public policy, that the public interests shall not be prejudiced by the neglect of the officers or agents to whose care they are confided. The government can only transact its business by and through its officers and agents, and its fiscal operations are so various, and its agencies and officers so numerous and scattered, that the utmost vigilance would not save the public from the most serious losses, if the doctrine of laches could be applied to its transactions. The Supreme Court of the United States has uniformly and repeatedly declared that in such cases as this laches cannot be set up against the government. United States v. Kirpatrick, 9 Wheat. 735, 6 L. Ed. 199; United States v. Van Zandt, 11 Wheat. 190, 6 L. Ed. 448; United States v. Nicholl, 12 Wheat. 509, 6 L. Ed. 709; Dox v. Postmaster General, 1 Pet. 318, 7 L. Ed. 160; Gibson v. Chouteau, 13 Wall. 99, 20 L. Ed. 534; Gaussen v. United States, 97 U. S. 584, 24 L. Ed. 1009; United States v. Thompson, 98 U. S. 489, 25 L. Ed. 194; Steele v. United States, 113 U. S. 129, 5 Sup. Ct. 396, 28 L. Ed. 952; United States v. Nashville, C. & St. L. Ry. Co., 118 U. S. 125, 6 Sup.

Ct. 1006, 30 L. Ed. 81; United States v. Insley, 130 U. S. 263, 9 Sup. Ct. 485, 32 L. Ed. 968.

It is contended by counsel for movant with much earnestness that by act of Congress the United States has adopted in its own courts the same rule to enforce judgments in favor of the United States as used in civil cases between its citizens. The statute cited to sustain this contention is section 916, Revised Statutes of the United States [U. S. Comp. St. 1901, p. 684]. Under and by virtue of that statute it is claimed that, when the United States voluntarily appears in a court of justice, it at the same time voluntarily submits to the law and places itself upon an equality with other litigants. This, indeed, may be true; but the courts have universally held that such condition is always qualified by the rule that neither the statute of limitations nor laches will bar the government of the United States as to any claim for relief in a purely governmental matter. United States v. Adams (C. C.) 54 Fed. 114; United States v. Southern Colorado Coal & Town Co. (C. C.) 18 Fed. 273. In the case of Pond v. United States, 111 Fed. 989, 49 C. C. A. 582, it was held, with citation of numerous authorities, that, since laches are not imputable to the government, its right in a governmental matter, prescribed by its own statutes, cannot be affected by state enactments. Such, indeed, is the status of the case at bar.

It is therefore ordered, adjudged, and decreed that the petition of J. T. Noojin be, and the same is, hereby dismissed out of this court. It is further ordered, adjudged, and decreed that said J. T. Noojin pay the costs of this proceeding, for which let execution issue. It is further ordered that said Noojin have 20 days from the filing of this decree to perfect an appeal, if he so desires, by entering into bond, with good and sufficient surety, in the sum of $1,500, to be approved by the clerk of this court, conditioned to pay such judgment as the appellate court may direct, and also to pay the judgment, costs, and interest on the judgment rendered March 10, 1892, should the appellate court decide this motion adversely to him, the said Noojin. It is further ordered that, upon the execution and approval of said bond, the execution on said judgment of March 10, 1892, be stayed until the further orders of this court.