### UNITED STATES v. SCHENDEL et al.

### No. 2799.

District Court, D. Wyoming.

Nov. 2, 1943.

Carl L. Sackett, U. S. Atty., and John C. Pickett, Asst. U. S. Atty., both of Cheyenne, Wyo., for plaintiff.

Albert D. Walton, of Cheyenne, Wyo., for defendant United States Fidelity & Guaranty Co.

KENNEDY, District Judge.

This suit represents an effort on the part of the Government to collect unpaid rentals under a lease of oil lands executed and delivered to one Flora C. Schendel for the faithful performance of the covenants of which a bond was given by the defendant, United States Fidelity and Guaranty Company, as surety. A trial was first had as to the issues between the plaintiff and the defendants other than the Surety Company which were merged in the form of a judgment of cancellation on July 8, 1943, and the cause continued as to the issues between the plaintiff and the Surety Company, which came on for trial on July 26, 1943. At the request of counsel, trial briefs were submitted and after several continuances as to the time of filing are now before the court for consideration.

The lease and the bond were executed some time during the year 1925 and this suit is brought to recover the unpaid rentals accruing from the year 1938 to the present time, amounting to approximately $2300.

The only point involved in the case is as to whether or not the Surety Company is relieved from the payment of the entire amount on account of certain action taken by it in making demands upon the Government when the default in the rentals had occurred, to begin suit for cancellation of the lease. The evidence in the case discloses that after such default had appeared, considerable correspondence was had between the defendant Surety Company and the Commissioner of the General Land Office and the Secretary of the Interior. The first letter involving a so-called demand was addressed to the Commissioner of the General Land Office on December 6, 1939, in which it was at least suggested that if the rentals were not paid, that suit should be forthwith instituted to cancel the lease and collect the monies due thereunder. The record shows that some of these communications were received and acknowledged with the advice that they would be given consideration. The last communication was a letter by the Superintendent of Claims of the defendant Surety Company, addressed to the Secretary of Interior, dated September 16, 1940, to the effect that the defendant Surety Company would not be responsible under its bond for any liability subsequent to the next anniversary of the bond, which date was February 16, 1941, although the an-

nual rentals appear to have been stated as from April 6 beginning with the year 1939. As it may be material later in reaching a conclusion as to the question here posed, the court finds from the evidence that the first demand upon the plaintiff seems to have been of a conditional nature indicating that additional effort should be made to collect the rental from the lessee. Under these circumstances, the court feels that the limit of the relief that could be extended to the defendant Surety Company would be from a liability for rentals from and after April 1, 1941.

The legal question presented is far from clear as no authority, in which the Government is involved, has been cited as passing upon the point and the court has found none.

The defendant contends that, as a general rule of law, a surety has the right to demand that suit be brought in the event of default, to cancel an obligation of its principal and if the same is not done within a reasonable time, the surety is relieved from further obligation. In support of this theory counsel cite 50 C.J. 94, carrying the following text: "—A surety bound for an indefinite and contingent liability and not for a sum fixed and certain to become due may revoke and end his future liability in either of two cases: (1) Where the guaranteed contract has no definite time to run. (2) Where it has such definite time, but the principal has so violated it and is so in default that the creditor may safely and lawfully terminate it on account of such breach."

The text purports to be supported by a number of State authorities but, when analyzed, seem to be not entirely uniform in their conclusions.

Of the cases examined, it appears that the greater majority have been ruled under a construction of specific state statutes covering the subject. Our own state has such a statute in W.R.S.1931, Sec. 89-4101, reading as follows:

"Sureties may require creditors to sue. A person bound as surety in a written instrument for the payment of money, or other valuable thing, may, if right of action accrue thereon, require his creditor by a notice in writing, to commence an action on such instrument forthwith, against the principal debtor; and unless the creditor commences such action within a reasonable time thereafter, and proceeds with due diligence, in the ordinary course of law, to recover judgment against the principal debtor for the money or other valuable thing due thereby, and to make by execution the amount thereof, the creditor, or the assignee of such instrument so failing to comply with the requisition of such surety shall thereby forfeit the right which he would otherwise have to demand, and receive of such surety, the amount due thereon."

Were this question to be decided as between private parties arising on a contract to be construed under the laws of the State of Wyoming, there could be little question that the relief to the defendant Surety Company should be sustained. Unfortunately however, there seems to be no federal statute involving notice to cancel by suit bonds given to the Government securing the faithful performance of contractual obligations. There is no logical way in which the Wyoming statutes can be made to apply to the surety contract here involved.

If a demand be made upon a Government official to bring suit and he fails to do so, thereby causing the surety to suffer additional liability, it naturally follows that it is caused by neglect or laches on the part of such official. The evidence in this case discloses that this lack of affirmative action must be the ground upon which the Surety Company seeks relief. The question naturally arises as to whether or not the Government can be made to suffer loss on account of the neglect or laches of one of its officials. Upon this point the Supreme Court has spoken in Hart v. United States, 95 U.S. 316, at page 318, 24 L.Ed. 479, in the following language: "The government is not responsible for the laches or the wrongful acts of its officers. Gibbons v. United States, 8 Wall. 269 [19 L.Ed. 453]; United States v. Kirkpatrick, 9 Wheat. 720 [6 L.Ed. 199]; United States v. Vanzandt, 11 Wheat. 184 [6 L.Ed. 448]; United States v. Nicholl, 12 Wheat. 505 [6 L.Ed. 709]; Jones et al. v. United States, 18 Wall. 662 [21 L.Ed. 867]. Every surety upon an official bond to the government is presumed to enter into his contract with a full knowledge of this principle of law, and to consent to be dealt with accordingly. The government enters into no contract with him that its officers shall perform their duties. A government may be a loser by the negligence of its officers, but it never becomes bound to others for the consequences of

such neglect, unless it be by express agreement to that effect."

It is not contended that the contract of suretyship here carried any provisions in regard to the manner of cancellation and therefore it was not a part of the contract which the defendant could insist upon in the protection of its rights. In the absence of any authority to the contrary, we feel that this announced principle by our highest court must rule this case and the United States should recover from the surety its claim for all unpaid rentals up to the date of cancellation of the lease on July 8, 1943.

Findings of fact and conclusions of law in harmony with this memorandum with proper computations as to the amounts, including interest, will be submitted by counsel for plaintiff in collaboration with their opponent on or before November 20, 1943, reserving proper exceptions to the defendant, and directing the entry of an appropriate judgment upon such findings and conclusions.