UNITED STATES *v.* MAXWELL LAND-GRANT Co. and others.

*(Circuit Court, D. Colorado.   July 28, 1884.)*

1. LAND GRANT—EFFECT OF CONFIRMATORY ACT OF CONGRESS ON SURVEYOR'S REPORT.

An act of congress confirming the report of the surveyor general of the territory of New Mexico as to the validity and extent of a Mexican land grant operates as a grant *de novo* of all the land *within the boundaries* as given in that report.

2. SAME—ERROR OR FRAUD OF SURVEYOR—POWERS OF THE COURTS.

If a surveyor, having been directed to make a survey of 22 leagues, in fact surveyed 44 leagues, and platted a tract thereof, the error is one that can be corrected by the courts, even after the issue of the patent; and that, notwithstanding the principle that a confirmatory act of congress secures to the patentee all the land included in the boundaries given in the surveyor's report.

3. SAME—OFFICERS OF THE GOVERNMENT—AGENCY—SCOPE OF AUTHORITY.

All the officers of the government, from the highest to the lowest, are but agents with delegated powers, and if they act beyond the scope of those delegated powers their acts do not bind the principal.

4. SAME—INVALIDITY—SUBSEQUENT PURCHASERS—WHAT IS NOTICE.

When a patent on its face recites the terms of the original petition and grant, and gives the description in full, as well as the lines of the survey based thereon, the purchaser of a title under such patent is chargeable with notice of whatever it contains.

On Demurrer to the Bill.

*J. A. Bentley*, for complainant.

*Frank Springer* and *C. E. Gast*, for defendants.

BREWER, J.   This was an action brought by the United States to set aside a patent to what is known as the Maxwell land grant, or to so much of it as lies within the state of Colorado.   The case now stands on demurrer to an amended bill.   Two principal questions have been presented and argued.

*First.* It is insisted that the extent of the original concession to Beaubien and Miranda did not exceed 11 square leagues to each, or less than 96,000 acres, and that the description in the petition, and other papers executed while the territory was a province of Mexico and before its acquisition by the United States, only defined the outer boundaries within which a tract of 22 square leagues could be selected by the applicants; and this, because, under the Mexican decree of August 18, 1824, as well as the regulations of November 21, 1828, only 11 square leagues could be granted to any one person; that the confirmation by the act of congress must be understood as limited to the terms of the original concession, and as confirming only a grant to that extent.   I think the case of *Tameling* v. *Freehold Co.* 93 U. S. 644, effectually disposes of this question.   That case held that the confirmation by an act of congress was equivalent to a grant *de novo*, and I seeing no substantial difference between that case and this. In order to a clear understanding of the point of difference presented by counsel for the government, a brief statement of the action of congress is necessary.

After the treaty of Guadalupe Hidalgo, by which we acquired this territory, congress, in 1854, (10 St. p. 308, § 8,) cast upon the surveyor general of the territory of New Mexico the duty of ascertaining the origin, nature, character, and extent of the private land claims therein, and required him to make a full report, with his decision thereon, to be laid before congress for such action as it should deem fit. In pursuance of that duty the surveyor general, on September 15, 1857, transmitted his report as to this claim, showing a petition for a grant of lands, describing them only by the outer boundaries, the grant by the governor of the territory, the giving of juridical possession, a dispute as to the grant, its confirmation by the departmental assembly, its occupation by the grantees, and then his opinion that it was "a good and valid grant according to the laws and customs of the government of the republic of Mexico." Some 18 of these land claims were in separate reports thus transmitted by him to congress and placed before that body for action, and on the twenty-first of June, 1860, an act was passed confirming most of them, in accordance with the recommendation and decision of the surveyor general. Among these claims No. 15 was the one in controversy in this suit. No. 4 was the one which came before the supreme court for consideration in the case just referred to. In the report of the surveyor general of that claim, after narrating the prior proceedings, which were similar to those in the case at bar, he makes this decision:

"The grant being a positive one, without any subsequent conditions attached, and made by a competent authority, and having been in the possession and occupancy of the grantees and their assigns from the time the grant was made, it is the opinion of this office that the grant is a good and valid one, and that a legal title vests in Charles Beaubien to the land embraced within the limits contained in the petition. The grant is therefore approved by this office, and transferred to the proper department, with the recommendation that it be confirmed by the congress of the United States."

So that while in that case he declared that the grant was a good and valid one, and that a legal title was vested in Charles Beaubien to the land embraced within the limits contained in the petition, in this he simply says that it is a good and valid grant according to the laws of the government of the republic of Mexico; hence counsel argues that as by such laws only 11 square leagues could be granted to a single person, what the surveyor general meant to say was simply that it was a good and valid grant to the extent of 22 square leagues within these outer boundaries, and that congress, confirming his report, only confirmed the grant to that extent. As heretofore stated, I do not think the difference between the cases of any significance. All preliminary statements in the two reports, as to petition, description, grant, and occupation, are alike. In each the petition is for the land described, and not a tract within the boundaries named. In neither is any notice of the alleged limitation of 11 square leagues. In each the land described is largely in excess of such limitation, in

that case amounting to over a million of acres. Each speaks of the grant, and affirms that *it* is valid, and does not say that there is *a* valid grant within the lands described. There is no suggestion of the boundaries of a tract of 11 or 22 square leagues within the out-boundaries, and, indeed, no reference to any tract but the single one described, and for which the petition was originally presented. Congress, in the act of confirmation, confirms these claims as recommended. By the same act, however, two other claims reported and recommended for confirmation by the surveyor general were confirmed,—the one only to the extent of five square leagues, and the other to two persons, to the extent of twenty-two square leagues; and in the second section the rules for locating these two tracts of five and twenty-two square leagues within the out-boundaries of the claims were prescribed. Evidently, the attention of congress was directed to the extent and boundaries of these claims, and if it had intended to confirm a grant of only 22 square leagues within the out-boundaries of this tract, it would, as in the other cases, have prescribed some rule for locating such grant. No other reasonable interpretation can be put upon the language of the surveyor general than this: that he believed the grant was of the entire land, that it was a good and valid grant according to the laws of Mexico, and that he recommended it as a whole for confirmation. It would be a strained and unnatural interpretation of such language to say that it meant simply that there was *a* valid grant within these out-boundaries; and the confirmation was of the grant as he stated it was made.

In coming to this conclusion I am not insensible of the rule that where there is a doubt as to the extent of a grant from the government the doubt is to be resolved in favor of the government; but, notwithstanding this, I think the language of congressional grants, and of all papers and instruments appertaining thereto, should be taken in its ordinary and natural meaning, and that there should be no straining of language or twisting of terms in order to disclose limits and exceptions therein. When a report is made that a petition was filed for a grant of certain lands, describing them, and that such lands were granted and have been occupied by the grantees, no one would for a moment suppose that it was the intention simply to say that within the boundaries described there was a valid grant for a smaller and undescribed portion of land.

I hold, therefore, that the act of congress operated as a grant *de novo* for all the land within the boundaries as given in the report of the surveyor general.

The *second* question is this: Assuming that the grant was good for all the land within the out-boundaries, and not simply for the 22 leagues, the bill alleges that the patent covers about 270,000 acres of land in Colorado not within those out-boundaries, and that this patent was obtained by fraud and misrepresentation. It charges that in 1870, which was after the confirmatory act, and while the

parties interested were seeking to obtain a patent, some of them employed one W. W. Griffin, a deputy United States surveyor, to make a survey of the out-boundary lines; that he did make a survey and plat, which was filed in the interior department; that by that survey and plat some 500,000 acres were included within these lines, which did not properly belong there; that thereafter and in 1877 the land department awarded a contract to two deputy United States surveyors to survey the grant on behalf of the United States; that these deputy surveyors did not run the true boundaries, but falsely and fraudulently, and with intent to cheat the government, ran their easterly and northerly lines at a great distance from the true boundaries, and so as to include therein about 270,000 acres of land lying within the state of Colorado. It is true, the bill does not show any improper relations or dealings between the parties interested in the grant and these two deputy surveyors, upon whose survey the patent issued; and upon that counsel for the defendants insist that whatever of wrong may have been done by the surveyors is not chargeable to them; that the government cannot take advantage of it; and that the courts cannot set aside a patent because of any mistake in the survey, the matter of survey being wholly within the jurisdiction of the land department; and the cases of *U. S.* v. *Flint,* 4 Sawy. 51; *U. S.* v. *Sepulveda,* 1 Wall. 104; and of *U. S.* v. *Vallejo,* Id. 658, are cited. I do not think these cases can be regarded as decisive of this question, for they must be read in the light of the special provisions of the statute concerning the settlement of California land claims. By these provisions a commission was established to determine the validity of such claims, with right of appeal to the district court, and after the validity of the claims had been finally established, the duty of making the survey was specifically cast upon the surveyor general, with right of review before the commissioner of the land department at Washington, while here the only provision to which I have been referred is found in section 2447 of the Revised Statutes, which provides that it may be lawful to issue patents for confirmed claims "upon the presentation to the commissioner of the general land-office of plats of survey thereof, duly approved by the surveyor general of any state or territory, if the same be found correct by the commissioner."

Now the principle upon which defendants make their claim is that laid down in the case of *U. S.* v. *Arrendondo,* 6 Pet. 729, as follows:

"That where power or jurisdiction is delegated to any public officer or tribunal over a subject-matter, and its exercise is confided to his or their discretion, the acts so done are binding and valid as to the subject-matter, and individual rights will not be disturbed collaterally for anything done in the exercise of that discretion within the authority and power conferred. The only questions which can arise between an individual claiming a right under the acts done and the public, or any person denying its validity, are, power in the officer and fraud in the party."

And it is insisted that, as no fraud in the party is shown, the patent is beyond question, no matter what mistakes or wrong may be charge-

able to the officers of the government.   I do not think that principle, when fairly construed, extends to the case at bar so far as to support the claim of the defendants.   It is obvious that surveys may be made in two very different classes of cases.   In the one class the surveyor may be directed to survey a tract of a given number of acres.   In such a case, there being no special provision as to the form or location of the tract, a discretion must be left with him.   He may survey the tract in a square form or with irregular boundaries, or locate it anywhere within the prescribed out-boundaries.   Thus, in the case at bar, if the claim had been confirmed to the amount of 22 leagues only, it might fairly be held that the surveyor had a discretion whether to locate these 22 leagues in a square form or in a tract of irregular shape, and anywhere within the out-boundaries, and that when he had made a survey and plat of such number of leagues, and a patent had been issued therefor, the matter was beyond inquiry in the courts.   Yet even in such cases, at least before the issue of the patent, it would seem, from the remarks of Mr. Justice MILLER in the case of *U. S. v. Vallejo, supra,* there might be circumstances which would justify a review of the surveyor's action in the courts; and, on the other hand, if he included in his survey a tract larger than he was authorized, his error ought to be correctible in the courts even after the issue of the patent.   Thus, if he were directed to make a survey of 22 leagues, and, in fact, surveyed and platted a tract of 44 leagues, I think the error one that could be corrected even after the issue of the patent, and that the principle heretofore referred to could not be invoked to sustain his action.   His action would be beyond his jurisdiction, which was limited to 22 leagues, and therefore not binding on the government, for the action of no tribunal or officer beyond the limits of the jurisdiction conferred is binding.   The other class of cases exists where the surveyor is required to survey, not a tract of a given number of acres, but a tract of certain specified general boundaries.   In that case he has no general discretion.   He may not run the lines where he sees fit, or include within his survey any land outside of those general boundaries.   It is, perhaps, true that where the calls in such a general description can be upon the configuration of the ground answered in two or three different ways, his judgment as to the true answer, when confirmed by the department at Washington and followed by a patent, may be beyond the challenge of the government.   But when these calls are in fact disregarded and the lines run far outside the general description, I think it must be held that he has gone outside his jurisdiction.   Of course, no trifling departure would, after the solemn act of the issue of a patent, justify the interference of a court of equity; but when such departure is a gross one, and a large body of land not within the specified out-boundaries is included within the survey, it seems to me a case is disclosed for the interposition of the courts.   All the officers of the government, from the highest to the lowest, are but agents

with delegated powers, and if they act beyond the scope of those delegated powers their acts do not bind the principal. Thus, if a grant was made of a specific section of land, and on the authority of such grant a patent was issued for two sections, it could not be claimed that the government was bound thereby, and could not set aside the patent so far as it included the second section. That, it seems to me, is parallel with the case at bar. The confirmation was of the grant with certain named out-boundaries, and the allegation is that the lines of the survey did not follow those out-boundaries, but extended far beyond them, so as to embrace 270,000 acres of public lands lying within the limits of this state. Such action of the surveyor, although confirmed by the commissioner and followed by a patent, seems to me to have been outside the jurisdiction and not binding on the government. I do not think the surveyor general, the commissioner of the general land-office, the secretary of the interior, or the president, or all together, can give away public lands, either directly or indirectly; and when they have executed instruments apparently conveying lands not granted by congress, the government can come into the courts for relief.

But it is said that the present owners have acquired title since the patent, have bought on its faith, and that as between them and the government the latter ought, therefore, to suffer for the conduct and mistakes of its officers and agents. The bill alleges, in a general way, notice by the defendants of all the mistakes and wrongs charged. But I do not lay so much stress on this, to defeat the application of the principle suggested, as upon the fact that the patent on its face recites the terms of the original petition and grant, gives the description in full, as well as the lines of the survey based thereon; and I take it that every one who purchases a title under such a patent is chargeable with notice of whatever it contains. The purchasers, therefore, had notice that congress only confirmed the grant as originally petitioned for, and that the officers of the government had no authority to issue a patent for any land outside those boundaries. They knew, or at least are chargeable with knowledge of, the fact now alleged in the bill, that the lines of this survey run way outside of the out-boundaries as given in the grant. Of course, this precludes them from occupying the position of innocent purchasers.

I think, therefore, that the demurrer to the bill must be overruled. The defendants will have leave to answer by the October rules.