## STEELE v. UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

Submitted December 22, 1884.—Decided January 19, 1885.

A private sale of old material arising from the breaking up of a vessel of war, made by an officer of the Navy Department to a contractor for repairs of a war vessel and machinery, is a violation of the provisions of § 1541 Rev. Stat.

The allowance of the estimated value of such material in the settlement of

such contractor's accounts is a violation of the provisions of § 3618 Rev. Stat.

A settlement of such accounts at the Navy Department and at the Treasury, in which the contractor was debited with the material at the estimated value, does not preclude the United States from showing that the estimates were far below the real value, and from recovering the difference between the amount allowed and the real value.

Delay in enforcing a claim arising out of an illegal sale of property of the United States, at a value far below its real worth, cannot be set up as a bar to the recovery of its value.

This was an appeal from the Court of Claims. See 19 C. Cl. 182. The facts are stated in the opinion of the court.

*Mr. W. D. Davidge* and *Mr. R. B. Washington,* for appellants.

*Mr. Solicitor-General,* for appellee.

Mr. Justice Woods delivered the opinion of the court.

The appellant was the claimant in the Court of Claims. He brought his suit April 30, 1880, to recover from the United States the sum of $3,400 for plumbing done by him on the United States Steamship Quinnebaug under a contract made with I. Hanscom, the Chief of the Bureau of Construction and Repair of the Navy Department, on behalf of the government, in the year 1875. There was no dispute that there was due to him on his contract for work done the sum sued for. The controversy arose on a plea of cross-demand, filed by the United States, which alleged that the officers of the government delivered to the appellant a large amount of old material to be utilized and reworked by him for the plumbing of the Quinnebaug; that a small portion of the material thus delivered he reworked for that purpose, but the greater portion thereof : . . . he sold to third parties, realizing therefrom the sum of $20,000.

The Court of Claims found that during the spring and summer of the year 1875, there were delivered to the appellant, by R. W. Steele, who was a naval constructor in the United States Navy, 103,949 pounds of old material resulting from the

breaking up of certain monitors; that before such delivery there had been no survey or inspection of the old material, and that of the amount so delivered the appellant sold and disposed of 98,748 pounds, for which he received money and property to the amount of $8,975.56, and the residue was lost in breaking up, handling, and sorting. These findings fully established the cross-demand of the government for $8,975.56. The court, therefore, in adjusting the controversy, after charging the appellant with a payment on his claim of $3,900 and another item for $300, about neither of which there was any dispute, held him liable for the amount so received by him for the old material, which was sufficient to extinguish his claim, and leave a balance of $3,575.56 due the United States. The court therefore rendered judgment against him for that amount, and from that judgment the present appeal is taken.

Upon the facts above stated, it is clear that the judgment of the Court of Claims was right. But the appellant insists that the other facts found by the court show that it was in error, and that its judgment should have been for the appellant for the amount of the claim for which his suit was brought. These facts were as follows: In the latter part of March or early in April, 1875, the appellant had an interview, in the city of Washington, with Isaiah Hanscom, Chief of the Bureau of Construction and Repair in the Navy Department, at which the two came to some verbal understanding that the appellant was to do the necessary plumbing on the United States Steamship Quinnebaug, which was then on the ways in the Philadelphia Navy Yard, and that Hanscom gave the appellant verbal instructions to go on with the work. In the same interview the matter of using on the Quinnebaug old material taken out of other vessels was talked of, and Hanscom spoke of the material as being worth $2,000, but it did not appear what material or what quantity of material was referred to. Afterwards, on April 6, 1875, the appellant wrote a letter to Hanscom, in which he offered to furnish all the material and labor necessary for the plumbing of the Quinnebaug for $14,500, and take in whole or part payment any brass or lead from old vessels that he could use for that purpose.

On the receipt of this letter, Hanscom directed Edward Hartt, who was a naval constructor on duty at the Philadelphia Navy Yard, to draw up specifications for the plumbing to be done on the Quinnebaug, and to solicit proposals therefor. Proposals were accordingly called for and received by the Bureau of Construction and Repair, but the proposal contained in the appellant's letter of April 6th was the lowest bid for the work.

On April 15, 1875, Hanscom sent an order in writing to Naval Constructor R. W. Steele to have all the old lead, brass and composition arising from the breaking up of the monitors, naming them, weighed, boxed up, and sent to Philadelphia, and to report the amount to the Bureau. The officer to whom the order was addressed, interpreting it as authority from the Bureau to deliver to the appellant the old material therein referred to, delivered it to him; and the appellant received the 103,949 pounds of such material heretofore mentioned as the property of the United States. On July 9, 1875, Naval Constructor R. W. Steele wrote to Hanscom that he had delivered the old material to the appellant, that it was estimated to be worth $2,000, which sum would be deducted from the first payment due him for his work. He added : " I beg to say that it was impossible to arrive at a satisfactory estimate of its value when appraised ; there was much alloy and dirt mixed with it, and the cost of transportation and labor in separating and preparing it for use is not known, which makes it necessary to correct the value after I obtain full information on the subject, and before his contract is completed and adjusted." Naval Constructor Steele was led to put this estimate upon the value of the old material by the statement made to him by Naval Constructor Hartt, who was superintending the plumbing on the Quinnebaug, that he supposed its value to be $2,000. But it did not appear that Hartt had ever seen any of the 103,949 pounds of old material, but he assumed its value to be $2,000, and so set it down in an account book in his office, and so charged it against the appellant in the settlement of the account of the latter.

On July 30, 1875, Hanscom, as Chief of the Bureau of Construction and Repair, wrote to the appellant declining his proposal to do the plumbing work on the Quinnebaug for $14,500,

and offered to pay him therefor the sum of $12,000, but with the following stipulation: " The old materials the government will furnish you to be reworked, which have accumulated from the breaking up of the light-draft monitors," naming them, " will go towards the materials used in this work; the balance to be paid in two equal payments, in money, on the certificate of the naval constructor superintending the work that the work is satisfactorily completed, according to the specifications which will be furnished." The appellant accepted this proposition by letter, dated August 2, 1875. There was no proof that he did any work on the Quinnebaug until after this correspondence.

Upon these facts the contention of the appellant is that the court should have charged him with the value of the old material at $2,000, and not at $8,975.56. This contention is based on the ground that Naval Constructor R. W. Steele, in his letter to Hanscom, dated July 9, 1875, estimated the old material, delivered to the appellant, to be worth $2,000, and stated that this sum would be deducted from his first payment, and that Naval Constructor Hartt so charged it against him at that sum in the settlement of appellant's account.

We think this an inadequate reason for allowing the appellant to appropriate for $2,000 property of the United States, which it is shown he disposed of for $8,975.56. There had been no inspection or appraisement by any officer of the United States of the old material delivered to the claimant, but merely a loose estimate of its value by Naval Constructor Hartt, who had never seen it, and there was no contract between the appellant and the United States which bound the latter to deliver this old material at the estimate put upon it by Hartt, or to deliver what was not used on the Quinnebaug at all.

The contract between the parties was that made by the offer contained in the letter of Hanscom to the appellant of July 30, 1875, and its acceptance by the appellant in his letter to Hanscom, dated August 2 following. These letters are set out in the appellant's petition as expressing the contract which was the basis of his cause of action. The previous verbal understanding referred to in the findings of the Court of Claims was merged in it.

It is clear from the terms of the proposition made by Hanscom to the appellant on July 30, 1875, and accepted by the latter on August 2, that it was only such old material as could be reworked in the plumbing of the Quinnebaug that was to be transferred to the appellant, and its value deducted from the contract price of the work. There was no offer on the part of Hanscom to deliver to the appellant old material which could not be used on the Quinnebaug in payment of the stipulated price for his work. Even if such had been the contract it would have been unauthorized, for § 1541 Rev. Stat. provides that " the Secretary of the Navy is authorized and directed to sell, at public sale, such vessels and materials of the United States Navy as, in his judgment cannot be advantageously used, repaired, or fitted out ; and he shall, at the opening of each session of Congress, make a full report to Congress of all vessels and materials sold, the parties buying the same, and the amount realized therefrom, together with such other facts as may be necessary to a full understanding of his acts." § 3618 provides that " all proceeds of old material . . . shall be deposited and covered into the Treasury as miscellaneous receipts, on account of ' proceeds of government property,' and shall not be withdrawn or applied except in consequence of a subsequent appropriation made by law."

These sections confer upon the Secretary of the Navy the only authority by which he can dispose of the materials of the United States navy. When in the judgment of the Secretary they can be advantageously used they must be used; when they cannot be so used they must be sold at public sale and the proceeds covered into the treasury. No officer of the Navy Department had any authority, therefore, to deliver to the appellant the materials of the navy to be sold by him and to allow him to put the proceeds into his own pocket.

If we yield to the contention of the appellant we should be required to hold that an officer of the navy could, without inspection or appraisement, trade off to a contractor in payment of the money due him on his contract, not only materials of every description, but even the vessels of the United States, when in his judgment they could not be advantageously used,

repaired, or fitted out.   It appears, therefore, that the appellant was not entitled, by the terms of his contract, to the material delivered to and sold by him, and if his contract had so provided, it would have been without authority of the statute, and therefore void.

The case of the appellant is not aided by the fact of the delivery to him, before the written contract was made, of the old material in question.   The delivery was without any authority of the Navy Department, and to put it in the most favorable light for the appellant, the delivery was made to him by mistake.   But whether with or without authority of the Department, if it was intended to vest in the appellant any title to the material, it was without authority of law, and cannot be set up as a ground of any right in him.

The case, therefore, comes to this : The appellant claims to hold without accounting therefor, except at less than one-fourth its value, the proceeds of old material belonging to the navy of the United States, which had been delivered to him without the sanction of law, and to which he had no title either by contract or otherwise.   The property was the property of the United States, and the appellant must be held accountable for its full value.

The fact that the account of the appellant was settled by the officers of the Navy Department, by charging him with the value of the old material at $2,000, is no bar to the recovery of its real value by the government.   The whole transaction was illegal, and appellant is chargeable with knowledge of the fact. It was in effect a private sale of the property of the United States without survey, inspection, or appraisement, at a grossly inadequate price.   The fact that the account had been settled by the officers of the Navy Department did not cure the unauthorized acts.   Both the disposition of the property and the settlement of the account were without authority of law. and not binding on the government.

Nor can laches in not objecting to the settlement of the appellant's account at an earlier time be imputed to the United States, and set up as a bar to the recovery of the value of the property unlawfully appropriated.   This is a case for the appli-

cation of the rule *nullum tempus occurrit regi. Lindsey* v. *Miller,* 6 Pet. 666, 669 ; *Gibson* v. *Chouteau,* 13 Wall. 92.

*Judgment affirmed.*