### UNITED STATES v. COSGROVE.[1]

*(District Court, D. Kansas. 1886.)*

POSTAL LAW—MAIL CONTRACT—ILLEGAL PAYMENT OF COMPENSATION TO CON-
TRACTOR—RECOVERY BY UNITED STATES.

Where money has been paid to a mail contractor for services performed
under orders of the postmaster general, expediting and increasing the service,
and providing compensation therefor in violation of Rev. St. §§ 3960, 3961, it
may be recovered in an action against the contractor, brought by the United
States under Rev. St. § 4057.

At Law. Demurrer to declaration.

*W. C. Perry,* U. S. Atty., and *Geo. L. Douglass,* for plaintiff.

*John C. Tomlinson,* for defendant.

FOSTER, J. This action is brought by the United States to recover
from the defendant a large sum of money, to-wit, $140,000, alleged
to have been paid him wrongfully and illegally, by order of the post-
master general, between October, 1878, and July, 1882, for carrying
the mail on route No. 39,109, from Las Vegas to Las Cruces, New
Mexico. The declaration contains three separate causes of action.
The first charges that the defendant entered into a contract with the
postmaster general for the United States, to carry the mail over said
route three times a week, for the contract price of $14,900 per year;
that at different times in 1878 the postmaster general increased and
expedited the service on said route, and made the following orders:

"1878, September 12, (7,772,) modified. Embrace Roswell on this route
between Fort Sumner and Fort Stanton, from July 1, 1878. Distance and
pay hereafter to be determined."

"1878, October 24, (9,444.) Modify order of September 12, 1878, (7,772,)
so as to increase distance 62 miles; contractor's pay $2,517.16 per annum,
being *pro rata.*"

"1878, October 29, (9,614.) Reduce schedule time from 180 hours to 120
hours, and allow contractor $21,876.55 per annum additional pay, being *pro
rata* from November 15, 1878. (2) Increase service four trips per week, and
allow contractor $52,120.96 per annum additional pay, being *pro rata* from
November 15, 1878."

It is charged that the order of October 29th, making allowances
for expedited service on said route, was based upon a sworn state-
ment of the defendant, of which the following is a copy.

"WASHINGTON, D. C., October 23, 1878.

"*Hon. D. M. Key, P. M. General*—SIR: In order to reduce the running
time on route 39,109, from Las Vegas to Las Cruces, New Mexico, from the
present schedule of seven and one-half days to five days, as contemplated, I
respectfully submit that to perform tri-weekly service upon this route upon
the present schedule will require twelve carriers and thirty-six animals. To
shorten the running time to five days' schedule will necessarily require nine

---

[1] Reported by Robertson Howard, Esq., of the St. Paul bar.

additional carriers and fifty-two animals additional to increase said speed as desired. This to the best of my knowledge and belief.

[Signed.] "CORNELIUS COSGROVE, Contractor.

"Acknowledged and sworn to before me, this twenty-third day of October, A. D. 1878. JOHN W. CARSON, Notary Public."

It is further alleged that said statement was false and untrue in this: that it did not require the additional number of carriers or animals as therein stated, to perform the expedited service, but that in fact no additional carriers and no additional animals were either required or used by reason of the expedition of the schedule time; and by reason of said false allegations the postmaster general was misinformed and misled, and made such allowance under a mistake of fact; that said payments to the said defendant under the order during said time amounted to the sum of $132,577.49.

The second count charges that the order of October 24, 1878, whereby said defendant was allowed an additional compensation of $2,517.16 per annum for supplying the Roswell post-office was made by the postmaster general in the understanding and belief that said office was not in fact located on the line of the original route, but was at a distance, requiring 62 miles additional travel every trip; whereas, in fact, said office of Roswell was located directly on the line of the only practicable and regular traveled route between Fort Sumner and Fort Stanton, and was directly on the route selected and traveled by the defendant under his original contract, and no additional travel whatever was required to supply said office; that under the defendant's contract he was expressly bound to supply all offices thereafter to be established on the line of his route, without any additional compensation, and that said additional allowance was made by the postmaster general and paid the defendant under a misunderstanding of the facts in the case, and during said time there was paid the defendant, on account of said service, the sum of $35,000.

The third count charges the defendant with the sum of $800, being the amount paid the defendant on account of supplying the Roswell office from July 1 to October 24, 1878, the latter being the date when the order was made, and that all payments for services prior to the date of the order were retroactive, and in violation of section 3960 of the Revised Statutes of the United States.

The defendant interposes a general demurrer, that the allegations do not constitute a cause of action. It will be observed that the petition nowhere charges a willful or intentional misrepresentation of the facts on the part of the defendant, or any fraudulent intent on the part of either the defendant or the postmaster general in the transaction; and it is urged by defendant's counsel that such fraudulent intent is necessary to create a liability on the defendant; that the statement made by him being merely an expression of an opinion, and made without any bad faith, however erroneous it might

prove to be, would not make the defendant liable. On general principles, and in the absence of any statutory provision or contract obligation, this principle is amply sustained by an impregnable volume of American cases cited by defendant's counsel. *Stilt* v. *Little*, 63 N. Y. 427; *Arthur* v. *Griswold*, 55 N. Y. 405; *Mooney* v. *Miller*, 102 Mass. 217; *Wheeler* v. *Randall*, 48 Ill. 182; *Byard* v. *Holmes*, 34 N. J. Law, 296; *Hammatt* v. *Emerson*, 27 Me. 308. They proceed upon the theory that when the truth is as accessible to the one party as the other, and there is no bad faith nor a warranty, but merely the expression of a belief or an opinion, although erroneous and acted upon by the other party, there is no liability. The English cases are not so decided, but seem to permit a recovery where the payor has not been guilty of laches, but has used some degree of care to ascertain the truth. *Kelly* v. *Solari*, 9 Mees. & W. 57; *Bell* v. *Gardiner*, 4 Man. & G. 23; *Townsend* v. *Crowdy*, 8 C. B. 492. And again, there may be a liability for money had and received where it has been paid under a mistake of facts, either by the payor or a mutual mistake by both parties, as where a contractor was to be paid a stated price per yard for paving a street, and an error was made in the measurement of the work and the party was overpaid. *Neitzey* v. *U. S.*, 17 Ct. Cl. 127; *Sharkey* v. *Mansfield*, 90 N. Y. 227; *Wheadon* v. *Olds*, 20 Wend. 175. Where parties had mutual accounts between them, and one party, in making a statement of his account, by mistake omitted a charge of $5,000, and thereby overpaid the other party, held, he might recover it back. *Lawrence* v. *American Nat. Bank*, 54 N. Y. 435; *National Bank* v. *Allen*, 59 Mo. 313.

In the case at bar there are several provisions in the acts of congress, as well as the contract between the parties, which have a very important bearing on the question at issue. Section 3960 of the Revised Statutes reads as follows:

"Compensation for additional service in carrying the mail shall not be in excess of the exact proportion which the original compensation bears to the original service; and when any such additional service is ordered, the sum to be allowed therefor shall be expressed in the order, and entered upon the books of the department; and no compensation shall be paid for any additional regular service rendered before the issuing of such order."

Section 3961 provides as follows:

"No extra allowance shall be made for any increase of expedition in carrying the mail, unless thereby the employment of additional stock and carriers is made necessary, and in such case the additional compensation shall bear no greater proportion to the additional stock and carriers necessarily employed than the compensation in the original contract bears to the stock and carriers necessarily employed in its execution."

Section 4057 provides as follows:

"In all cases where money has been paid out of the funds of the post-office department, under the pretense that service has been performed therefor when in fact such service has not been performed, or as additional allowance for increased service actually rendered when the additional allowance exceeds

the sum which, according to law, might rightfully have been allowed therefor, and in all other cases where the money of the department has been paid to any person in consequence of fraudulent representations, or by the mistake, collusion, or misconduct of any officer or other employe in the postal service, the postmaster general shall cause suit to be brought to recover such wrong or fraudulent payment or excess, with interest thereon."

One of the covenants in the contract, and covered by the compensation agreed on, binds the defendant as follows:

"*Third.* To take the mail and every part thereof from, and deliver it and every part thereof at, each post-office on the route, or *that may hereafter be established on the route.*"

The several provisions of the acts of congress are public laws, and are binding on the postmaster general and all parties contracting with him. They must take notice of the powers conferred on him, and the restrictions and limitations imposed. The law-making power may confer such authority and make such limitations on the public officers of the government as it deems proper, and a person entering into a contract with such officers must look to the statute under which it is made, and see for himself that his contract comes within the terms of the law. *The Floyd Acceptances,* 7 Wall. 667–680; *Curtis* v. *U. S.,* 2 Ct. Cl. 152; *Steele* v. *U. S.,* 113 U. S. 128; S. C. 5 Sup. Ct. Rep. 396; *People* v. *Fields,* 58 N. Y. 505; *Supervisors, etc.,* v. *Ellis,* 59 N. Y. 624. Admitting the facts as charged in this declaration to be true, does it set out transactions between the defendant and the postmaster general, and the payment of the public funds in pursuance thereof, unauthorized by law? It seems to me there can be but one answer to this question, and that in the affirmative. Section 3960 provides that "compensation for additional service in carrying the mail shall not be in excess of the exact proportion which the original compensation bears to the original service. ＊ ＊ ＊ And no compensation shall be paid for any additional regular service rendered before the issuing of such order."

It is charged that the orders of the postmaster general for the additional service, and payments made defendant therefor, violated the provisions of this section: (1) That the compensation paid was in excess of the proportion which the original compensation bore to the original service; (2) that the compensation was paid defendant for services rendered before the issuing of the order to supply the Roswell office, to-wit, from July 1st to October 24th; (3) that additional compensation was paid defendant for services (supplying the Roswell office) which he was bound to perform, under his original contract, without extra compensation.

Section 3961 provides that "no extra allowance shall be made for any increase of expedition in carrying the mail, unless thereby the employment of additional stock and carriers is made necessary, and in such case the additional compensation shall bear no greater proportion to the additional stock and carriers necessarily employed

than the compensation in the original contract bears to the stock and carriers necessarily employed in its execution."

It is charged that to perform the original service on the schedule of seven and one-half days it required twelve carriers and thirty-six animals, and to shorten the running time to five days the defendant certified it would necessarily require nine additional carriers and fifty-two additional animals; and on this basis the additional compensation was allowed and paid defendant, whereas, in fact, no additional carriers or animals whatever were required or used by reason of such expedited service. It seems hardly possible that so great a cutting down of time could be done without requiring additional carriers and animals, or putting a great deal of extra work on those already employed, but the court can only accept the averment as made in the declaration, and this certainly charges a direct violation of the statute; and whether the money was paid on an intentional or unintentional misrepresentation of facts, or no representation at all, or by mistake or fraud, matters not. The money was paid in violation of law and for services never performed.

The only question remaining to be answered is, can the United States maintain an action to recover it back? It seems to me the plain and unmistakable words of section 4057, before cited, answer this question fully and completely, and give such right of action. See, also, *Steele* v. *U. S.*, 113 U. S. 134; S. C. 5 Sup. Ct. Rep. 396.

In the case of *U. S.* v. *Parker*, tried in this court last June, Judge DUNDY, of Nebraska, took a similar view of the law as given in this opinion, while in the case of *U. S.* v. *Barlow, ante*, 903, tried in Colorado last December, Judge HALLETT took the opposite view. The amount in controversy in any of these actions is sufficient to entitle it to a review in the supreme court, where the law will be finally settled.

The demurrer must be overruled.