## UNITED STATES v. LEVINSON et al.

(Circuit Court of Appeals, Second Circuit. June 9, 1920.)

No. 241.

1. **Interpleader ⟨key⟩3—Appropriate remedy when each of two bidders claims property as purchaser.**

Where each of two bidders claimed to be the purchaser of a vessel offered for sale by the government, a bill of interpleader *held* properly filed by the United States, which still retained possession of the vessel.

2. **United States ⟨key⟩40—Not bound by unauthorized act of officer or agent.**

To bind the government, its agent must act strictly within his official authority, and every one who deals with him takes the risk of his doing so.

3. **United States ⟨key⟩58—Not bound by delivery of bill of sale of vessel by department through mistake.**

Where the Secretary of the Navy, pursuant to orders of the President, advertised a vessel for sale to the highest bidder, but through a mistake in his department the highest bid was not properly filed, and he executed a bill of sale to a lower bidder, such act *held* without authority and not binding on the government, and as between the two the highest bidder *held* entitled to the vessel, which had not been delivered.

Hough, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Southern District of New York.

Bill of interpleader by the United States against Morris Levinson and S. Harry Johnson. From the decree the United States and Johnson appeal. Appeal by United States dismissed. Reversed on Johnson's appeal.

Certiorari denied 254 U. S. ——, 41 Sup. Ct. 15, 65 L. Ed. ——.

Francis G. Caffey, U. S. Atty., of New York City (Peter B. Olney, Jr., Asst. U. S. Atty., of New York City, of counsel), for the United States.

Henry Amerman, of New York City, for appellant Johnson.

Duncan & Mount, of New York City (John A. McManus, of New York City, of counsel), for appellee.

Before WARD, HOUGH and MANTON, Circuit Judges.

WARD, Circuit Judge. Section 5 of the act of March 3, 1883 (Comp. St. § 2787), relating to the sale of vessels stricken from the navy register, requires an appraisal to be made and advertisement for sealed proposals; the vessel to be sold to the highest bidder above the appraised value, unless the President of the United States shall otherwise direct in writing. January 7, 1919, the President directed that all vessels purchased or commandeered by the government during the war between the United States and Germany be appraised and sold to the former owners at the appraised values, and that if they are not desirous of purchasing—

"the Secretary of the Navy shall advertise and sell at public sale any and all of said vessels which are in his opinion not necessary for the needs of the navy at such price as he shall approve."

July 11, 1919, the Secretary of the Navy having advertised, among other vessels, the steam yacht Wadena for sale August 20th for cash to the highest bidder, one Levinson submitted a bid of $5,150 and one Johnson a bid of $6,500, both in full compliance with the terms of sale. Through inadvertence in the offices of the Navy Department, Johnson's bid was placed with the bids for another vessel named the Wandena, to be sold September 8, which bids were opened 18 days after the bids for the Wadena had been opened. In the meantime the Secretary notified Levinson that his bid had been accepted; it being the highest known to him. Levinson paid the amount and a bill of sale was given to him September 3, 1919.

September 8, when the bids for the Wandena were opened, Johnson's bid for $6,500 for the Wadena was found, and the Navy Department stopped delivery of the Wadena to Levinson, returned him the checks given in payment, and requested a return of the bill of sale. This Levinson refused to do, at the same time returning his checks, with the claim that title to the vessel had passed to him. Johnson has offered to pay the full amount of his bid, and has demanded the delivery of the vessel to him as the highest bidder.

Thereupon the government filed this bill of interpleader, setting forth the foregoing facts, and both of the bidders filed answers, admitting the allegations of the bill. The trial judge directed that the vessel be delivered to Levinson on the ground that, having under the executive order a discretion to accept or reject bids, the Secretary had accepted Levinson's. Johnson has taken this appeal, and so has the government, by direction of the Attorney General.

[1] Though no party objected to the jurisdiction in equity of this bill, the trial judge raised the question whether it was a proper bill of interpleader, or bill in the nature of interpleader. We think he was right in holding that it was. The government is in possession of the vessel. Two different bidders are claiming it, and the government does not know to which bidder to deliver it. This is a typical case for a bill of interpleader. The only difficulty is that the Secretary of the Navy having delivered the bill of sale to one of the parties, has an interest, and is not a mere stakeholder, if the government is to be treated like a private suitor. On the other hand, if it is not bound by the mistake in the Navy Department, a question now to be considered, it remains a mere stakeholder, without interest.

The Secretary of the Navy intended to sell the vessel to the highest bidder, and so stated in the offer of sale. Although he reserved in the notice of sale the right to reject any and all bids, he did not reject, or intend to reject, Johnson's bid, because he did not know of its existence. The effect of the authority given him by the executive order to sell for such price as he shall approve is only to relieve him of the restriction of the act of 1883 that a bid, to be accepted, must be more than the appraised value, and to permit him to reject all bids, if they be wholly inadequate.

[2] It was argued that the sale to Levinson should be set aside, because made under a mutual mistake. The District Judge was of opinion that there was no mutual mistake, and that because knowledge of John-

sons bid, which came to the Navy Department through the mail, is to be imputed to the government, just as such knowledge would be imputed to a private party, although by a mistake of his agent he had no actual knowledge. In this we cannot concur. The relation of the government to its agents is different from that of private parties. To bind the government, its agent must act strictly within his official authority, and every one who deals with him takes the risk of his doing so. The subject has not been frequently considered, but is treated of in United States v. Stockgrowers' Nat. Bank (C. C.) 30 Fed. 912; The Floyd Acceptances, 7 Wall. 666, 19 L. Ed. 169; Cooke v. United States, 91 U. S. 389, 23 L. Ed. 237; Steele v. United States, 113 U. S. 128, 5 Sup. Ct. 396, 28 L. Ed. 952.

[3] The Secretary agreed to sell the Wadena to the highest bidder, and this he supposed he was doing when he accepted Levinson's bid. He exercised, and intended to exercise, no discretion to accept anything but the highest bid. He had no authority to do so under the notice of sale. Therefore, in delivering the bill of sale to Levinson, he acted without authority to bind the government. It is necessary as matter of public policy that the government be protected in this way against liabilities, unlimited in number and amount, resulting from the mistakes or misconduct of its agents.

It is further contended on behalf of Levinson that the government, in selling the vessel, had descended into commercial business and abandoned its sovereign capacity. We are of opinion that in selling vessels not needed by the navy it exercises a governmental function, and does not go into business. The case is not at all like a department buying, carrying, and selling merchandise as was disclosed in the case of the Panama Railroad, owned by the United States. Salas v. United States, 234 Fed. 842, 148 C. C. A. 440.

We are of opinion that the United States, being a mere stakeholder, has no standing to take an appeal, and its appeal is dismissed, but that, the Secretary having no authority to deliver the bill of sale to Levinson, and being bound to deliver it to Johnson as the highest bidder, the decree must be reversed.

HOUGH, Circuit Judge, dissents.