THE NIGHTINGALE.
No. 3415.

District Court, D. Connecticut.
July 17, 1933.

George H. Cohen, Asst. U. S. Atty., of Hartford, Conn., for the United States.

Alfred C. Bennett, of New York City (Paul Taylor, of counsel), for petitioner.

HINCKS, District Judge.

The gas screw yacht Nightingale was seized by the United States under libel charging violation of sections 584, 593, and 594 of the Tariff Act of 1930 (19 USCA §§ 1584, 1593, and 1594), and under sections 4377 and 4214 of the Revised Statutes (46 USCA §§ 325 and 103). Thereafter the vessel was appraised at $6,000 and released to the claimant upon a bond in the amount of $6,000, executed by the claimant and the Greater City Surety & Indemnity Corporation, who is the petitioner herein, as surety, upon condition that, "if judgment passes against the claimant as to the whole or any part of said vessel, and the claimant does not, within twenty days thereafter, pay into the court the amount of the appraised value of such vessel, or such sum as the court may decree, with costs, judgment shall be granted on this bond, on motion in open court, without further delay." ·

Thereafter a judgment of condemnation and forfeiture of said yacht, her tackle, apparel, furniture, and cargo was duly entered, requiring the Marshal to sell the same, "or in lieu thereof to accept the appraised value of the same." The Marshal thereupon made inquiry of the claimant as to whether it would surrender the vessel or pay its bond, whereupon the vessel was returned, but in a stripped condition, much of its motor mechanism having been removed. Thereafter, promptly upon notice of this shortage in equipment, the district attorney instructed the Marshal to withhold sale of the vessel and, pursuant to this instruction, the vessel has remained in the custody of the government ever since, and, so far as the record discloses, without demand from the claimant or his surety. The district attorney promptly advised the claimant of the condition in which the vessel was returned, adding that, "under the circumstances you realize that what was returned does not constitute a return of the boat as called for by law, and it is therefore our intention to proceed immediately to forfeit the bond which was furnished in this case." Thereafter, "a judgment on the bond" was duly entered in this court, ordering that judgment be entered for the United States to collect the bond of $6,000, with costs, theretofore given as above set forth for the release of the boat. It is this judgment which the petitioner seeks to set aside by the pending petition.

The precise grounds upon which the petitioner bases its claim for relief are not set forth in its moving affidavit. From its brief,

however, it appears that the petitioner's claim is based upon the contention that, under the bond, which was given pursuant to 28 USCA § 751, the obligors (that is, the claimant and his surety who is the petitioner herein) were under obligation only to return the vessel or, at most, to make good the difference between the stipulated value of $6,-000 and the value of the boat in its stripped condition when returned. The claim is also made that the original decree ordering the Marshal to sell the vessel, or in lieu thereof to collect the amount of the bond, gave the claimant and his surety an option as to whether they would return or pay. The claim is also made that the United States and its attorney are estopped to claim under the bond under the facts set forth above.

None of these contentions can be sustained. 28 USCA § 751, under which concededly the bond was given and accepted, contains no provision for the return of property once a bond has been accepted therefor. It is expressly provided that only if judgment passes in favor of the claimant shall the court cause the bond to be cancelled, "but if judgment passes against the claimant, * * * and the claimant does not within twenty days thereafter pay into the court * * * the amount of the appraised value of such vessel * * * so condemned, with the costs, judgment shall be granted upon the bond, on motion in open court, without further delay."

That this language was intended to exclude the cancellation of a bond upon the surrender of the property for the release of which it was given is further indicated by the language of 28 USCA § 752, in which it is provided that all vessels, etc., condemned for violation of the Revenue Acts, etc., "and for which bonds shall not have been given by the claimant," shall be sold at public sale. This statute, in that it contains no provision for the return of a bonded vessel, clearly contemplates that, upon a decree of forfeiture, a claimant, whose vessel has been released under bond, has no option but to pay the bond.

In the case of the "Haytian Republic," 154 U. S. 118, 14 S. Ct. 992, 38 L. Ed. 930, it was clearly held that a release of a vessel under a bond given under this statute operates permanently to sever the vessel from the control of the court, so that it remains subject to liens theretofore and thereafter attaching, and subject to seizure for other offenses. Indeed, under the Admiralty Law (see 28 USCA § 754) it is altogether clear that it is beyond the power of the court to recall a vessel which has once been released on stipulation. "The Union," Fed. Cas. No. 14,346; "The White Squall," Fed. Cas. No. 17,570; U. S. v. Ames, 99 U. S. 35, 25 L. Ed. 295. The reasons for this rule are clearly set forth in the opinion in the case of "The Union," supra. The same reasons have equal application to bonds or stipulations given pursuant to 28 USCA § 751 in cases involving violations of the revenue or navigation laws. And in the case of United States v. Davidson, 50 F.(2d) 517, it was held by the Circuit Court of Appeals for the First Circuit that the provisions of 28 USCA § 751 were mandatory, with the result that any owner who so elects is entitled under this section to a release of his vessel seized under the customs and revenue acts, and that the vessel, once released, is beyond the reach of the Treasury Department even under the drastic provisions of 27 USCA § 42.

■ I conclude that in the case at bar neither the government nor any of its officers or agents, judicial or executive, had power to recall the vessel once it was released. It follows that, in so far as the decree of the court ordered a sale of the vessel which had previously been released, the decree was beyond the power of the court and of no effect. The presence of this clause in the decree is plausibly explained by the District Attorney. He calls attention to a practice to embody in all such decrees a provision either for a sale or in lieu thereof for a judgment on the bond, so that, if the vessel had been released on bond without notice to his office, the alternative remedy in the decree might have effect.

Since here, the vessel having been released, the court was without power to order its sale, it follows that anything said or done by the Marshal or the district attorney looking to a recall of the vessel was wholly nugatory. And the petitioner's contention that the United States, by reason of the acts of the Marshal and the district attorney looking to a recall of the vessel, is estopped from proceeding on the bond, is wholly without foundation in law. United States v. Maxwell Land-Grant Co. (C. C.) 21 F. 19; Potter v. United States (C. C. A.) 122 F. 49. See also, Steele v. United States, 113 U. S. 128, 5 S. Ct. 396, 28 L. Ed. 952.

The rule, therefore, requiring the district attorney to show cause why the judgment should not be vacated is accordingly discharged.